Rochester Family Division
No. 2008-743

IN THE MATTER OF DAVID DUQUETTE AND AMANDA DUQUETTE

Argued: June 16, 2009
Opinion Issued: July 9, 2009

*Molan, Milner & Krupski, PLLC*, of Concord (*John S. Krupski* on the brief and orally), for the petitioner.

*Hanlon & Zubkus*, of Rochester (*Mark D. Hanlon* on the brief and orally), for the respondent.

DUGGAN, J. The petitioner, David Duquette, appeals an order of the Rochester Family Division (*Ashley*, J.) concerning the interpretation of a Qualified Domestic Relations Order (QDRO) and a modification of child support. We affirm.

The record supports the following facts. The petitioner (husband) and the respondent, Amanda Duquette (wife), divorced in October 2007. The parties' divorce decree, as pertaining to distribution of the husband's retirement fund, stated: "The parties' intent in regards to the New Hampshire Retirement System [NHRS] is contained in the [QDRO] incorporated herein as if fully set forth." Paragraph 5 of the QDRO, in turn, provided that, upon the husband's retirement, the wife would receive monthly pension distributions equal to fifty percent of the husband's maximum retirement allowance. Paragraph 8 of the original QDRO also provided for survivor benefits, stating:

> At the time of the Participant's [husband's] retirement, the Alternate Payee [wife] shall be designated as the sole beneficiary

under Option 4B, 50% pop-up Joint Survivor Retirement Allowance. Any cost to the option shall be borne solely by the Alternate Payee. Notwithstanding the foregoing, the Participant shall retain the right under RSA 100-A:13 to terminate said Option in the event of the Alternate Payee's subsequent remarriage.

After the NHRS informed the parties that the QDRO language in paragraph 8 was not enforceable, the husband amended the paragraph as follows to obtain NHRS approval:

At the time of the Participant's retirement, the Alternate Payee shall be designated as the sole beneficiary under Option 4B, 50% pop-up Joint Survivor Retirement Allowance. Any cost to the option shall be borne solely by the Alternate Payee. Notwithstanding the foregoing, the *Alternate Payee shall be required to execute a renunciation form pursuant to RSA 100-A:13 II(b)* in the event of the Alternate Payee's subsequent remarriage.

(Emphasis added.) In January 2008, the husband filed a motion to bring forward and approve the alternate QDRO language. The trial court held a hearing in May. Following the hearing, the trial court issued an order approving the revised QDRO, and ruling that the requirement of renunciation in paragraph 8 pertained only to the wife's survivor benefits, and was not a renunciation of all retirement benefits.

The original divorce decree also incorporated a Uniform Support Order and parenting plan concerning the parties' sixteen-year-old son, which provided that the husband would pay $198 per week in child support to the wife. That amount represented a downward adjustment from the guidelines based upon the special circumstances of "shared residential responsibility." The approved parenting plan provided: "The parties shall share residential responsibility of [their son] according to a schedule consistent with [his] wishes, and the parties' agreement." In March 2008, the wife sought an increase in child support as a result of a substantial change of circumstances; namely, that their son spent the majority of his time with her as opposed to his father sharing residential responsibility. The trial court addressed the issue at the May hearing.

In its written order, the trial court found that the wife had satisfied the requirements of RSA 458-C:7, I (Supp. 2008) by establishing a substantial change of circumstances since the parties' divorce. Specifically, the trial court found that the divorce decree required the parties to share residential responsibility, and, in the absence of actual shared responsibility, that the original downward adjustment of child support was no longer justified. The trial court therefore increased the husband's child support obligation to the guideline amount of $373 per week. This appeal followed.

On appeal, the husband argues that the trial court: (1) misinterpreted the parties' intent as to the renunciation of the wife's interest in his retirement funds; and (2) erred in finding that a substantial change of circumstances merited an increase in child support payments. We address each in turn.

I

The husband argues that the trial court misinterpreted the parties' intent concerning his retirement fund because the court refused to entertain parol evidence and misconstrued applicable statutes. We will affirm the findings and rulings of the trial court unless they are unsupported by the evidence or legally erroneous. *In the Matter of Cole & Ford*, 156 N.H. 609, 610 (2007).

The husband argues that the trial court should have admitted parol evidence concerning the parties' intent when agreeing to the divorce decree and QDRO in mediation. In particular, he argues that the renunciation provision in the QDRO applies to *all* retirement benefits upon the wife's remarriage, as opposed to the survivor death benefits alone. Although he recognizes that parol evidence is generally inadmissible to vary or contradict a writing, he argues, citing *Grabowski v. Grabowski*, 120 N.H. 745, 748 (1980), that it should have been admitted here "to establish that the writing itself does not reflect the actual agreement reached by the parties."

The first step in determining whether parol evidence is admissible is to consider whether the writing is a total integration and completely expresses the agreement of the parties. *Behrens v. S.P. Constr. Co.*, 153 N.H. 498, 504 (2006). In this case, the parties' divorce decree stated: "The parties' intent in regards to the [NHRS] is contained in the [QDRO] incorporated herein as if fully set forth." This language clearly reflects the parties' intent to incorporate the original QDRO as the sole source of their intent concerning the NHRS. As such, the trial court correctly refused to entertain parol evidence concerning the parties' intent when signing the QDRO, but rather looked to the QDRO alone to divine their intent. We therefore turn to the trial court's interpretation of the QDRO.

Generally, if no alternative allowance option is elected under the NHRS statute, *see* RSA 100-A:13, III, retirement allowance annuity payments cease upon the member's death. *See* RSA 100-A:11, II(e) (Supp. 2008). In this case, to ensure continued benefits after the husband's death, the wife agreed to pay a premium for a survivor benefit option out of her own portion of annuity benefits disbursed prior to the husband's death. Under that option, were she to remain unmarried, she would receive survivor benefits payable after his death under RSA 100-A:13, III, Option 4. If, however, she were to remarry, paragraph 8 of the original QDRO allowed

the husband to terminate her survivor benefit option under RSA 100-A:13, II(a), divesting her of any survivor benefit payments.

After the parties agreed to the original QDRO, however, the NHRS informed the husband that he could not exercise any authority under RSA 100-A:13, II(a) until he was actually retired, making the original agreement unenforceable. He therefore amended paragraph 8 to place the burden upon the wife, should she remarry, to renounce any future benefits under RSA 100-A:13, II(b). The husband argues that paragraph 8 of the amended QDRO, requiring the wife to renounce her option under RSA 100-A:13, II(b), applies to her entire interest in the retirement plan, as opposed to her interest solely in survivor death benefits. His argument is belied, however, by the plain language of the original QDRO.

As the trial court noted, the only portion of the QDRO mentioning remarriage and renunciation of benefits is paragraph 8, which, as originally written, gave the husband the right to terminate the *survivor benefits option* if the wife remarried. He argues, however, that the revised provision applies to *all* future benefits. He argues that the trial court's conclusion to the contrary was based upon the erroneous opinion of the NHRS that renunciation under RSA 100-A:13, II(b) pertains only to survivor benefits. We need not interpret the provision, however, because even if the husband is correct and the statute does in fact allow a beneficiary to renounce all future rights under RSA 100-A:13, II(b), it is of no consequence in this case.

Regardless of the permissible scope of renunciation under RSA 100-A:13, II(b), the husband could not unilaterally amend the original QDRO to force the wife to renounce all rights when the original agreement provided only for the termination of her survivor benefits. The parties' clear intent, as expressed in the divorce decree through the original QDRO, was to provide for divestiture of survivor benefits alone. The only effect of the amended language, therefore, is to require the wife to terminate the option upon remarriage, as opposed to allowing the husband to do so. Because the record supports the trial court's conclusion, we find no error.

## II

The husband next argues that the trial court erred in adjusting his weekly child support payments under the Uniform Support Order. Because trial courts are in the best position to determine the parties' respective needs and their respective abilities to meet them, we will set aside a modification order only if it clearly appears on the evidence that the trial court's exercise of discretion is unsustainable. *In the Matter of Donovan & Donovan*, 152 N.H. 55, 59 (2005). To show that the trial court's ruling was an unsustainable exercise of discretion, the husband bears the burden of

demonstrating that the ruling was clearly untenable or unreasonable to the prejudice of his case. *G2003B, LLC v. Town of Weare*, 153 N.H. 725, 729 (2006).

■ To obtain a modification of support obligations within three years of the entry of the last order of support, the moving party must show a substantial change of circumstances of the parties that makes continuing the original order improper and unfair. *In the Matter of Adams & Houle*, 156 N.H. 257, 258 (2007). A modification should not be granted in the absence of evidence of a substantial change of circumstances. *Id.* at 259; *see* RSA 458-C:7, I (Supp. 2008) (parties may apply for modification every three years or when there is a "substantial change of circumstances").

■ New Hampshire's child support guidelines "shall be applied in all child support cases, including . . . any order modifying a support order." RSA 458-C:4, I (Supp. 2008). The guidelines "establish a uniform system to determine the amount of child support awards." *In the Matter of Carr & Edmunds*, 156 N.H. 498, 501 (2007) (quotation omitted). "There is a rebuttable presumption that a child support award calculated under the guidelines is the correct amount of child support." *Id.* (quotation omitted).

Here, the trial court originally allowed a downward adjustment based upon the special circumstances of an agreement to share residential custody of the parties' son. That agreement, however, never came to fruition, and the wife bore primary residential responsibility for their son. The husband argues that the unequal custody arrangement is nonetheless consistent with the parties' agreement because the agreement provided that residential responsibility would be shared "according to a schedule consistent with [their son's] wishes." Thus, he argues, if their son does not voluntarily spend half of his time with his father, the arrangement does not contradict the Uniform Support Order.

■ We, like the trial court, reject the husband's argument. The Uniform Support Order clearly states that the parties' intent and hope was that their son would spend more time with his father. In that regard, the parties agreed to a downward departure from the support guidelines based upon an intent to share residential responsibility and its appurtenant expenses. Because both parties agree that the wife now bears primary residential responsibility, the trial court concluded that she had met her burden of establishing a substantial change of circumstances meriting a return to the guideline child support payments. The trial court's finding of a material change of circumstances is supported by the record and, therefore, is not clearly untenable or unreasonable to the prejudice of the husband's case.

*Affirmed.*

BRODERICK, C.J., and DALIANIS and HICKS, JJ., concurred.