NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

5th Circuit Court – Claremont Family Division
No. 2012-696


IN THE MATTER OF MARCUS J. HAMPERS AND KRISTIN C. HAMPERS

Argued: November 14, 2013
Opinion Issued: June 24, 2014


Orr & Reno, P.A., of Concord (Jeremy D. Eggleton and Judith A. Fairclough on the brief, and Mr. Eggleton orally), for the husband.


Primmer, Piper, Eggleston & Cramer, P.C., of Manchester (Doreen F. Connor on the brief and orally), for the wife.


CONBOY, J. In these cross-appeals, Marcus J. Hampers (husband) and Kristin C. Hampers (wife) challenge a post-divorce decision of the 5th Circuit Court – Claremont Family Division (Yazinski, J.) on the husband's motion to modify his child support and alimony obligations and on the wife's petition for contempt. The husband asserts that the trial court erred by: (1) applying a standing order requiring him to pay the reasonable attorney's fees incurred by the wife for any proceeding or matter related to the divorce decree and subsequent amendments; and (2) failing to calculate "gross income" for child support purposes under RSA chapter 458-C by using "net" figures for investment income to account for losses and expenses as well as gains. The wife asserts that the trial court erred by: (1) calculating child support based upon the husband's 2009 income and tax return when his 2010 income information and tax return were available; and (2) ordering her to repay sums

that she had received in excess child support. We affirm in part, reverse in part, vacate in part, and remand.

I.    Attorney's Fees Order

The husband contends that the standing attorney's fees order should be vacated because, among other things, it violates his rights to equal protection and due process under the State and Federal Constitutions. See U.S. CONST. amends. V, XIV; N.H. CONST. pt. I, art. 14. The wife responds that the husband has challenged the same attorney's fees order on two prior occasions before this court, and, therefore, this challenge is barred by res judicata or collateral estoppel. The husband counters that these preclusive doctrines are inapplicable because the court has never issued a final decision on the merits as to the constitutionality of the attorney's fees award, because the same cause of action is not at issue in this case, and because the trial court maintains jurisdiction to review ongoing child support, custody, and alimony issues. We agree with the wife that res judicata bars this claim.

Evaluation of the parties' procedural arguments requires an analysis of our previous rulings on the attorney's fees award. In the parties' 2004 divorce decree, the trial court ordered the husband to pay all of the wife's attorney's fees incurred in the case and in any appeal from its ruling. In the Matter of Hampers & Hampers, 154 N.H. 275, 289 (2006) (Hampers I). The court further ordered the husband to pay all of the wife's "reasonable attorney's fees for any proceeding or any other matter relating to any term of this decree and any amendment thereto or to the child in this matter in the future" within thirty days of the husband's receipt of the wife's attorney's fee statement. Id. (brackets and ellipsis omitted). The court found that it would not be equitable for the wife to pay fees and costs, id., and that it was necessary to require the husband to pay the wife's future attorney's fees to "prevent abuse of this justice system." Id. at 289-90.

We affirmed the order requiring the husband to pay the wife's reasonable attorney's fees incurred in connection with the case. Id. at 290. However, we remanded for the trial court to determine the reasonableness of the outstanding attorney's fees claimed by the wife pursuant to the procedure we set out in Gosselin v. Gosselin, 136 N.H. 350, 353-54 (1992). Hampers I, 154 N.H. at 29. We further held that the Gosselin procedure would apply to any attorney's fees the wife incurred in the future. Id. We declined to address the husband's constitutional arguments because he did not demonstrate that he had preserved them for our review. Id.

In 2007, the husband again challenged the attorney's fees award. In an unpublished order, we vacated the trial court's attorney's fees award "[t]o the extent that the trial court awarded fees to the [wife], which were incurred

between December 2004 and September 2006, without first subjecting these fees to a Gosselin review." In the Matter of Hampers and Hampers, No. 2007-519 (N.H. Jan. 24, 2008). We explained that "fees incurred after the date of the final divorce decree could not have been part of the property settlement," and, therefore, were required to be reviewed under Gosselin — including those incurred in connection with the defense of the original case and appeal. Id. However, we rejected the husband's argument that the trial court erred by, in effect, awarding the wife appellate attorney's fees. Id. We explained, first, that such an award is permissible, see Salito v. Salito, 107 N.H. 77, 78 (1966), and, second, that "we [had] already impliedly upheld the trial court's inherent authority to award such fees in the instant case." Hampers, No. 2007-519 (N.H. Jan. 24, 2008).

The applicability of res judicata presents a question of law that we review de novo. Sleeper v. Hoban Family P'ship, 157 N.H. 530, 533 (2008). "The doctrine of res judicata prevents parties from relitigating matters actually litigated and matters that could have been litigated in the first action." Gray v. Kelly, 161 N.H. 160, 164 (2010) (quotation omitted). The doctrine "applies if three elements are met: (1) the parties are the same or in privity with one another; (2) the same cause of action was before the court in both instances; and (3) the first action ended with a final judgment on the merits." Id.

The husband contests both the second and third elements, arguing as to the latter that our decision based upon his failure to preserve constitutional arguments for vacating the attorney's fees award does not constitute a decision on the merits. We are not persuaded, since even a default judgment can "constitute res judicata with respect to a subsequent litigation involving the same cause of action." McNair v. McNair, 151 N.H. 343, 353 (2004) (quotation omitted). "The essence of the doctrine of res judicata is that a final judgment by a court of competent jurisdiction is conclusive upon the parties in a subsequent litigation involving the same cause of action," Brzica v. Trustees of Dartmouth College, 147 N.H. 443, 454 (2002) (quotation omitted), "even though the plaintiff is prepared in the second action to present evidence or grounds or theories of the case not presented in the first action." Id. at 455-56. Because we consider our decision in Hampers I to constitute a final decision on the merits for the purposes of res judicata analysis, we must determine only whether the petition to modify at issue here involves the same cause of action.

"The term 'cause of action' means the right to recover and refers to all theories on which relief could be claimed arising out of the same factual transaction in question." Radkay v. Confalone, 133 N.H. 294, 297 (1990). "Generally, once a party has exercised the right to recover based upon a particular factual transaction, that party is barred from seeking further recovery, even though the type of remedy or theory of relief may be different." Id. at 298; see also Shepherd v. Town of Westmoreland, 130 N.H. 542, 544

3

(1988) (finding barred plaintiff's constitutional and inverse condemnation claims that arose out of the same factual transaction as did her previous claim for a variance).

The husband argues that the divorce proceeding and the present petition to modify are not the same "cause of action" because "a cause of action is the underlying right that is preserved by bringing a suit or action" (quotation omitted), and the underlying right at issue in the divorce proceeding was the bundle of issues connected with the dissolution of a marriage requiring equitable review. The underlying right now at issue, he contends, is his statutory ability to modify his child support payments under RSA 458-C:7 (Supp. 2013). He maintains that the attorney's fees award was ancillary to each of these rights, and, therefore, his claim is not barred. We are not persuaded.

In our 2006 opinion on the divorce proceeding, we upheld the enforceability of the standing attorney's fees order, including the portion of the order awarding the wife her reasonable attorney's fees for "any proceeding or any other matter relating to any term of this decree and any amendment thereto or to [the child] in this matter in the future." See Hampers I, 154 N.H. at 289-91. The husband's current arguments that the standing attorney's fees order is unconstitutional and contrary to law are therefore barred by that determination. See Brzica, 147 N.H. at 455 ("'Cause of action' has a broad transaction definition in the res judicata context, including the right to recover regardless of the theory of recovery.").

Although attorney's fees may be an ancillary issue, see, e.g., Vinson v. Ass'n of Apartment Owners, 312 P.3d 1247, 1253 (Haw. Ct. App. 2013), in Hampers I, it was one of the bases upon which the husband challenged the trial court's order. Hampers I, 154 N.H. at 289-91. Because "[t]he essence of the doctrine of res judicata is that a final judgment by a court of competent jurisdiction is conclusive upon the parties in a subsequent litigation involving the same cause of action," Brzica, 147 N.H. at 454 (quotation omitted), and because we reached a final judgment specifically addressing the propriety of the same attorney's fees order at issue here, the husband has not demonstrated that his petition to modify constitutes a different "cause of action" such that our earlier judgment on the standing attorney's fees order lacks preclusive effect.

The husband next argues that res judicata does not apply to attorney's fees awards when the trial court maintains jurisdiction to review ongoing child support, custody, and alimony issues. He distinguishes "ordinary" divorce-related attorney's fees awards, which address the attorney's fees incurred during the initial divorce action, from the award here, which provides that the husband will continue to pay the wife's attorney's fees "for any proceeding or

4

any other matter relating to any term of this decree and any amendment thereto or to [the child] in this matter in the future." See Hampers I, 154 N.H. at 289. He cites Appeal of Carnahan, a workers' compensation case, for the proposition that when a body exercises continuing jurisdiction over a matter, res judicata will not apply to prevent that body from exercising its statutory power to correct a mistake of law. Appeal of Carnahan, 160 N.H. 73, 77-78 (2010). That proposition does not apply here.

Although the modifiability of an order may affect the applicability of res judicata, see Restatement (Second) of Judgments § 13 comment c at 133-34, § 73, at 197-200 (1982), here, unlike in Appeal of Carnahan, 160 N.H. at 77, the standing order on attorney's fees was not part of the judgment subject to modification pursuant to statute. The statutory provisions the husband cites, RSA 458-C:2 (2004), :7, refer to the court's authority to modify child support orders, not orders on attorney's fees included in a divorce decree.

We recognize that the Restatement (Second) of Judgments provides that "[j]udgments that govern continuing or recurring courses of conduct may be subject to modification even though the power of doing so is not expressly provided." Restatement (Second) of Judgments, supra § 73 comment b at 198. However, "the principal factor in whether a judgment is subject to modification is whether it contemplates an interaction between the activity of the judgment obligor and some other conditions over which the judgment does not exercise control." Id. at 199. Thus, when an "unforeseen or uncontrollable interaction occurs between the judgment obligor and the surrounding circumstances, the balance between burden and benefit can be disturbed," and if such disturbance "assumes substantial proportion, redress by modification may be appropriate." Id.

The husband, however, does not argue that changed circumstances warrant modifying the standing attorney's fees order. Rather, he contends that the standing attorney's fees order is based upon an error of law. Thus, the husband alleges no reason why the "balance between burden and benefit" should be disturbed, and has failed to demonstrate that "redress by modification" is warranted. Id.

II.     Investment Income

On the issue of child support, the parties' 2004 divorce decree, which deviated from the child support guidelines, explained:

> For purposes of calculating child support under the guidelines,
> [the husband's] income shall consist of his employment income
> plus one-half of all interest, taxable or tax-exempt, dividends,
> capital gains, or other income to which he is legally entitled

whether he chooses to actually receive it annually as reported on this tax return. The court makes this deviation from the requirements of RSA 458-C:2, IV.

On appeal from the divorce decree, the husband did not challenge this definition of income for child support purposes, but rather the trial court's alleged failure to apply it properly. See Hampers I, 154 N.H. at 283. Because we agreed that the record did not support the figure the trial court had used for his monthly gross income, we vacated the order and remanded. Id. at 277, 283. The subsequent procedural challenges to that recalculation are not before us in this appeal.

This appeal challenges the trial court's ruling on the husband's March 5, 2010 motion to modify the child support order. See RSA 458-C:7, I(a) (permitting either party to move for "modification of such order 3 years after the entry of the last order for support, without the need to show a substantial change of circumstances"). The parties agreed to the amount of the husband's earned income for child support purposes, but disagreed as to how to calculate his "substantial unearned income from investments in partnerships and capital gains." Each party presented an expert witness to testify as to calculation of the husband's "present income." The husband's expert, Richard J. Maloney, CPA, testified that capital losses of more than $3,000 in excess of capital gains should be carried forward to offset capital gains in subsequent years, in order to fully recognize the "economic reality" of the capital loss. He also testified that only the net income from the husband's investments in partnerships should be attributable to present income for the purposes of child support.

The wife's expert, Dennis R. Stone, CPA, testified that a capital loss in excess of a capital gain should not affect gross income for child support purposes because it represents a loss of principal, not a reduction of income available for child support purposes. He contended that the practice of carrying forward capital losses to offset unrelated capital gains was tantamount to averaging income over time. As for partnership investment expenses, Stone explained that they are reported on the partner's personal tax return as itemized deductions, "[n]ot as a reduction of the [partnership] income."

The trial court agreed with the wife's expert. It noted that federal tax law is inapplicable to calculations of child support under New Hampshire law, and that RSA 458-C:2 "includes a definition of gross income and contains the word net only in reference to rental income," indicating the legislature's familiarity with the terms "gross" and "net" and suggesting its intent to limit "net" to rental income. Recognizing that its ruling would result in a large child support figure under the guidelines, the trial court explained that "the legislature provided an avenue to address the [husband's] concern by providing the Court with discretion to lower any child support award it deems confiscatory."

On appeal, the husband argues that the trial court erred by refusing to allow him to carry over capital losses in excess of capital gains to offset future years' capital gains, and by declining to deduct the partnerships' expenses from the revenues of the partnership investments.

Trial courts have broad discretion in reviewing and modifying child support orders. In the Matter of Jerome & Jerome, 150 N.H. 626, 628 (2004). However, whether capital losses may be carried over to offset future years' capital gains in calculating "investment income," and whether the trial court should have included the husband's partnership expenses as part of his gross income as defined under RSA 458-C:2, IV, are questions of statutory interpretation, and, thus, are questions of law, which we review de novo. See In the Matter of Albert & McRae, 155 N.H. 259, 262 (2007). We are the final arbiter of the legislature's intent as expressed in the words of the statute considered as a whole. In the Matter of Plaisted & Plaisted, 149 N.H. 522, 523 (2003). We interpret legislative intent from the statute as written, and we will not consider what the legislature might have said or add words that the legislature did not include. Id. at 524. We interpret statutes in the context of the overall statutory scheme and not in isolation. Id.

For purposes of calculating a parent's child support obligation, RSA 458-C:2, IV defines gross income as:

> all income from any source, whether earned or unearned, including, but not limited to, wages, salary, commissions, tips, annuities, social security benefits, trust income, lottery or gambling winnings, interest, dividends, investment income, net rental income, self-employment income, alimony, business profits, pensions, bonuses, and payments from other government programs . . . including, but not limited to, workers' compensation, veterans' benefits, unemployment benefits, and disability benefits.

(Emphases added.). Although trial courts have discretion to adjust a child support award based upon special circumstances, see RSA 458-C:4, II (2004), the legislative scheme requires that all items includable as "gross income" be considered to determine the parties' support obligation. In the Matter of State & Taylor, 153 N.H. 700, 703 (2006); see also In the Matter of Feddersen & Cannon, 149 N.H. 194, 197 (2003). The parties characterize both questions before us as relating to the definition of "investment income." Contrary to the wife's assertion that we implicitly answered these questions in Albert, 155 N.H. at 263, the meaning of "investment income" for child support purposes under RSA 458-C:2 is an issue of first impression for this court. We note at the outset that "income tax returns are an unreliable guide to the income available for child support purposes," Albert, 155 N.H. at 264, and we have interpreted

the statute so that the concept of gross income encompasses the money available to the obligor parent for paying child support. Id.

## A. Capital Losses in Excess of Capital Gains

The husband argues that the trial court erred by allowing capital losses to offset gains only to the extent of the capital gains for any given year. He contends that this ruling: (1) is internally inconsistent because it recognizes losses only up to the point of the gain, but no further; (2) conflicts with persuasive authority recognizing the effect of capital losses; and (3) is against sound public policy.

None of the husband's arguments is persuasive as to the issue at hand: i.e., the treatment, for child support purposes, of capital losses that exceed capital gains within a given year. Maloney testified to three potential ways to address capital losses in excess of capital gains: (1) to follow the method consistent with federal tax law, pursuant to which a portion of the excess loss ($3,000) is deducted from other income, and the remainder of the loss is carried over to offset capital gains (and up to $3,000 of other income) in future years; (2) to deduct the entire capital loss from gross income in the year in which the loss was incurred; or (3) to "ignore the economic reality of the loss" by deducting capital losses only up to the point of capital gains. Another option, which neither party addresses, is to treat capital gains as income and not to account for capital losses when calculating gross income. The husband argues in favor of option (1), and claims that option (3), which he characterizes as the approach that Stone supported and the trial court ordered, is not "rational" because it does not accurately reflect the income available for child support purposes. We disagree and discuss each option in turn.

We first conclude that "investment income" for child support purposes should not be defined as consistent with the federal taxation approach of carrying over to future years capital losses which exceed capital gains. See 26 U.S.C. § 1212(b) (2012). "[H]ow federal income taxation statutes define 'income' is of little relevance to our interpretation of gross income under the child support guidelines." Taylor, 153 N.H. at 704; see Albert, 155 N.H. at 263. "This is so because the objectives of the child support guidelines differ from the objectives of the federal income taxation statutes." Albert, 155 N.H. at 263 (quotation, brackets, and ellipsis omitted). "The objectives of the child support guidelines are to reduce the economic consequences of divorce on children and ensure that children enjoy a standard of living equal to that of the noncustodial parent's subsequent family." Taylor, 153 N.H. at 703; see RSA 458-C:1, II (2004); see also In the Matter of Dolan and Dolan, 147 N.H. 218, 221-22 (2001). Allowing losses to carry over would violate the purposes of the child support guidelines because it would artificially decrease income in the years

8

subsequent to the capital sale, even though the income available for child support in those subsequent years would not have decreased.

"The child support guidelines set forth in RSA chapter 458-C mandate that an obligor's entire income be considered." Jerome, 150 N.H. at 633 (quotation omitted). Moreover, "[o]ur case law is clear that trial courts should not employ income-averaging over a number of years to determine child support obligations." Rattee v. Rattee, 146 N.H. 44, 46 (2001). Instead, "child support should be determined on the basis of present income." Id. As Stone testified, allowing a carry-over of capital losses is a form of income averaging because it nets "losses from prior periods that have nothing to do with the gains that were realized in the current period" against one another. Accordingly, we conclude that the trial court correctly rejected the loss carry-over option to calculate investment income.

We likewise conclude that "investment income" for child support purposes should not be defined to permit deducting an excess capital loss from other categories of gross income in the year it is incurred. Under that option, capital losses could exceed income generated from other sources, leaving a parent with "negative" income, regardless of whether the parent has actual income available for child support. As the parties agree, that approach would be against the best interest of the child.

Because neither party argues in favor of the fourth option, we need not decide whether to adopt the construction under which capital gains constitute income without regard to capital losses. See L. Morgan, Child Support Guidelines: Interpretation and Application § 4.07[H] at 4-47 to 4-48 (2d ed. 2013) (analyzing different courts' approaches to capital gains as income for child support purposes); cf. Abercrombie v. Abercrombie, No. E2003-01226-COA-R3-CV, 2004 WL 626713, at *8 (Tenn. Ct. App. Mar. 29, 2004) (declining to offset capital gain with capital losses).

Thus, we uphold the trial court's decision to give effect to capital losses only up to the amount of capital gains realized during the same year. First, we note that neither party argues that capital losses should not offset capital gains in the year that both are incurred. Thus, we need not decide here whether that treatment is permitted under our statutory scheme. Second, we agree that the definition of "investment income" limits the deduction of capital losses, at most, to the extent of any capital gains within the same year. The child support guidelines turn on the obligor parent's income available for support, and not on the parent's net worth. See, e.g., RSA 458-C:3 (Supp. 2013) (establishing formula for calculation of child support based upon parents' incomes); In the Matter of Woolsey & Woolsey, 164 N.H. 301, 306 (2012) ("calculating a parent's ability to pay child support necessitates determining an actual ability to pay"). Given the guidelines' focus upon the obligor's actual ability to pay and the

amount available for child support purposes, it is reasonable to limit a deduction of capital losses to the extent of any capital gains in one year.

Accordingly, as between the two approaches advanced by the parties, because the purposes of RSA chapter 458-C are better served by limiting the offset for capital losses to the extent of capital gains in the same year, as the trial court did, we affirm that ruling. If the legislature wishes to clarify the treatment of capital losses, it is of course free to amend the statute as it sees fit. See Evans v. J Four Realty, 164 N.H. 570, 576 (2013).

B. Income From Investments in Partnerships

The husband next argues that in determining his gross income, the trial court erroneously declined to deduct reasonable and necessary investment expenses from the revenues of his partnership investments. There is no dispute that his 2009 income included income from investments in eight partnerships. Maloney explained in his report:

> [The husband] is a limited partner in eight limited partnerships. These partnerships generate a variety of types of income as well as expenses. Because these investments are partnerships, the specific category of income and expense is reported in different sections of the tax return rather than combined to determine the actual net income from a particular partnership. Solely because of the requirements of the Internal Revenue Code, the expenses related to the investment activity in the partnership are not netted against the income for reporting purposes. Rather, the items of income are reported in determining gross income but the expenses are reported as itemized deductions.

> The partnerships must file an information return (Form 1065). On Schedule K-1 of that return, the partnership separately identifies many items of income, deduction, capital gain, capital loss, credits, etc., with the remaining activity being summarized as 'ordinary business income (loss)'. Each partner reports these various items on his individual tax return. These items will be reported on separate schedules (Schedule A for expenses, Schedule B for Interest and Dividends, Schedule D for capital gains, Schedule E for ordinary business income or loss, etc.). In order to calculate the correct total income from a partnership, all these items must be considered.

Stone disagreed that "investment and portfolio expenses should be deducted" from income, reasoning "that such amounts are correctly categorized as expenses and as such should not be accounted for as a reduction of total

income for child support purposes." Noting that the statutory definition of gross income includes the word "net" only as applied to rental income, the trial court accepted Stone's opinion "as the appropriate standard to apply."

The husband argues that the business expenses of the partnerships were the natural, necessary, and ordinary cost of investing in such partnerships, and maintains that these expenses must be deducted annually from the gains realized from the partnerships to determine the correct amount of "investment income." He explains that, like the Limited Liability Company (LLC) at issue in Albert or an S-corporation, the partnerships are "pass through" entities, requiring each investor to report the partnership's gains, losses, and expenses on his or her tax return. See Albert, 155 N.H. at 263-64. Citing Woolsey, 164 N.H. at 307, he argues that an obligor's support obligation should be measured by taking into account all of his income and deducting therefrom the losses incurred and expenses actually paid that were directly related to the production of that income. He asserts, however, that "it would be irrational and untenable to determine precisely how every partnership expense related to the income produced by the partnership." He further notes his lack of decision-making authority over the partnerships, highlighting his inability to shield income, manipulate the amount of money he received in order to reduce his child support obligation, or use the business to defray his personal expenses.

The wife counters that each source of income enumerated in RSA 458-C:2, IV, other than "net rental income," is intended to refer to that source in gross, citing Albert, 155 N.H. at 263. She also argues that including all of the husband's "investment income" in his gross income is more consistent with the goal of the child support guidelines to ensure that their son will enjoy a standard of living commensurate with that of the husband. Finally, she argues that the partnerships' expenses are the result of a "discretionary decision to employ a third party that charges management fees," and constitute "a personal expense incurred for management of an investment asset," rather than a business expense directly related to the production of income. We disagree with the wife's arguments on this point.

We first note that the statute's failure to refer to "net" investment income is not dispositive. We rejected a similar argument in Woolsey, 164 N.H. at 304-06. There, we considered the meaning of "self-employment income," which the legislature also did not qualify by the term "net," and found "implicit in RSA 458-C:2, IV that the term 'self-employment income' means self-employment income net of legitimate business expenses incurred for the purpose of earning that income." Woolsey, 164 N.H. at 306. We reasoned that it was "improbable that the legislature intended the term 'self-employment income' in RSA 458-C:2, IV to mean the gross receipts of a sole proprietorship when a portion of

11

that money is payable to others as legitimate business expenses, and is therefore unavailable for the payment of child support." Id. at 305.

We turn now to how an obligor parent's income from partnerships should be calculated. A partnership is subject to "pass through" taxation, similar to an S-corporation or an LLC. See, e.g., Thill v. Thill, 26 S.W.3d 199, 202 n.1 (Mo. Ct. App. 2000); 26 U.S.C. §§ 701-709 (2013). The partnership itself does not pay tax, but its members are taxed on their distributive shares of the partnership's income, gain, loss, deduction, or credit. See 26 U.S.C. § 702. The parties agree that the husband's income from the partnerships should be considered "investment income"; however, other states generally treat partnership income as in the nature of self-employment income. See, e.g., Morgan, supra § 4.08, at 4-89 ("Income from self-employment, including rent, royalties, income from proprietorship of a business, and income from joint ownership of a partnership or closely held corporation is calculated by taking gross receipts minus ordinary and necessary expenses required to produce such income."); Rein v. Rein, No. FA 064021530S, 2012 WL 898774, at *2-3 (Conn. Super. Ct. Feb. 27, 2012) (analogizing family partnership to self-employment for purposes of calculating parent's income, and concluding the parent's partnership earnings were "includable in gross income for child support purposes, but only after deduction of all reasonable and necessary business expenses" (quotation omitted)); Roubanes v. Roubanes, No. 13AP-369, 2013 WL 6858958, at *2-3 (Ohio Ct. App. Dec. 30, 2013) (interpreting statute defining "self-generated income" for child support purposes by focusing on amount of money actually available for child support purposes).

We agree with the logic analogizing self-employment, proprietorship of a business, and joint ownership of a partnership. Cf. Opinion of the Justices, 123 N.H. 296, 308 (1983) (understanding legislative concern to be that proposed tax on business income "might have the practical effect of being a tax on the income of sole proprietors or partners, since the personal income of such individuals is essentially the net profit derived from their businesses' income"). As noted above, we have already determined that "self-employment income" in RSA 458-C:2, IV "means self-employment income net of legitimate business expenses incurred for the purpose of earning that income." Woolsey, 164 N.H. at 306. We reached this conclusion because "calculating a parent's ability to pay child support necessitates determining an actual ability to pay, and, therefore, . . . presupposes the deduction of legitimate business expenses." Id.

The determination of a parent's partnership income "net of legitimate business expenses incurred for the purpose of earning that income," however, involves more than simply applying the figures reported on income tax returns. See Woolsey, 164 N.H. at 306; see also Albert, 155 N.H. at 264. "[T]o be deductible for purposes of determining 'self-employment income' under RSA

12

458-C:2, IV, business expenses must be actually incurred and paid, and reasonable and necessary for producing income." Woolsey, 164 N.H. at 307 (quotations and citations omitted). "It is for the trial judge to determine whether claimed expenses meet those criteria." Id. Although a tax return may yield valuable data for a trial court's use in setting child support, see Abercrombie, 2004 WL 626713, at *7, "income tax returns are an unreliable guide to the income available for child support purposes." Woolsey, 164 N.H. at 305 (quotation omitted).

The statute does not suggest that an obligor parent's status as a limited partner should result in the blanket deductibility of his share of the partnership's tax-reported expenses, without regard to whether those expenses are reasonable and necessary for the production of income. See RSA 458-C:2, IV. The husband argues that the "relevant calculus is whether the partnership expense is merely a mask for the personal expense of the obligor," asserting that the "stereotypical case" would be one in which an obligor who owns an interest in a closely held corporation makes minimal distributions to himself, while characterizing his personal living expenses as business expenses in order to avoid child support obligations. He contends that because he lacked decision-making authority over the partnerships, and therefore could not shield income or manipulate the amount of money he received in order to reduce his child support obligation or use the business to defray his personal expenses, the rationale for limiting deductions to only those that are reasonable and necessary for the production of income does not apply.

Our reasoning in Woolsey does not support the husband's position. See Woolsey, 164 N.H. at 304-07. The justification for considering a parent's gross income to be less than the gross receipts of his business is that certain expenses must be paid from the business's receipts in order for the business to continue to function. Id. at 306 ("To embrace a rule that a child support obligation takes precedence over the self-employed obligor's business expenses could create the untenable situation that the expenses associated with the production of income be held in abeyance until the child support is paid." (quotation, ellipses, and brackets omitted)). It is only the reasonable and necessary business expenses, however, that may reduce a parent's gross income from self-employment. Thus, the parent who seeks to reduce his gross income must demonstrate why gross receipts from self-employment do not legitimately reflect income available for child support.

In so interpreting our statute, we admittedly place a risk on a parent who is a limited partner with no control over the partnership's expenses: The partnership may incur expenses that are not reasonable and necessary for the production of income, and thus not deductible from the parent's income for child support purposes, yet the parent may not receive any benefit from these expenses. However, this is a justifiable risk. As between a parent who chooses

13

to participate in (or invest in) a partnership that might incur unnecessary expenses, and that parent's children, it is the parent who should bear the risk. Other investment vehicles that are not in the nature of self-employment will not carry the same risk; however, with respect to income from a partnership, only those expenses that are reasonable and necessary for the production of income are deductible therefrom for the purposes of calculating child support. See id. at 306-07.

Whether to deduct reasonable and necessary expenses from the business's income distributions when calculating a parent's income for child support purposes is a highly fact-specific determination. See In re Marriage of Brand, 44 P.3d 321, 330 (Kan. 2002) (discussing treatment of income from an S-corporation). To the extent that the husband suggests that the burden is on the wife to establish that the charged expenses were not "actually incurred and paid, and reasonable and necessary for producing income," Woolsey, 164 N.H. at 307 (quotations and citation omitted), we hold that the burden of demonstrating the deductibility of such expenses is on him. See, e.g., Reichert v. Hornbeck, 63 A.3d 76, 103 n.11 (Md. Ct. Spec. App. 2013). The burden is properly on the partner because he or she has the ability to obtain information to establish the propriety of the partnership's actions. Cf. Zold v. Zold, 911 So. 2d 1222, 1233 (Fla. 2005) (placing burden on S-corporation shareholder spouse to prove "that the undistributed 'pass-through' income was properly retained for corporate purposes rather than impermissibly retained to avoid alimony, child support, or attorney's fees obligations by reducing the shareholder-spouse's amount of available income").

Here, the wife characterizes the contested partnership expenses as nondeductible personal expenses; the husband, based upon Maloney's testimony, disagrees. The trial court did not determine whether the expenses were reasonable and necessary for the production of the partnerships' income, however, and the record does not allow such a conclusion as a matter of law. Maloney explained that he had generated the schedules for his report by taking the figures as reported by the partnerships to the husband — that is, as they appeared in the tax returns. Stone likewise expressly disclaimed any knowledge as to whether the expenses were "actually incurred and paid, and reasonable and necessary for producing income." Because "[i]t is for the trial judge to determine whether claimed expenses meet [our established] criteria," Woolsey, 164 N.H. at 307, and the trial court did not address the claimed expenses in this case, remand is necessary for the trial court to make that determination. Id.

Accordingly, we reverse the trial court's ruling on this issue and remand for further proceedings consistent with this opinion.

III.    Use of 2009 Income Figures

The wife asserts that the trial court erred when it calculated child support based upon the husband's 2009 income and tax return, despite the fact that his 2010 income figures and tax return were available and neither party questioned the reliability of the more current earnings data.  She contends that, unless the most recent figures are misleading, as they were in Feddersen, 149 N.H. 194 (2003), and In the Matter of Crowe & Crowe, 148 N.H. 218 (2002), the most current figures available should provide the basis for the court's determination of "present income."  Here, she argues, the husband's 2009 income was abnormally low, compared to the years before and after, and therefore the trial court unsustainably exercised its discretion when it based the husband's child support obligations on his 2009 income.

The husband responds that the trial court's decision to use his 2009 income figures was within its discretion, after hearing substantial testimony from both experts concerning the husband's income for both 2009 and 2010.  He supports this argument with two policy considerations:  first, that to require the court to consider only the most current information available would result in a cycle of discovery, expert preparation, and potentially strategic trial delay, leaving the figures (and thus the payment obligation) to depend upon the vicissitudes of court scheduling; and second, that the decision to use financial information from the date of filing is critical to preserving a moving party's right to modification, since a change in income before the petition is heard would obviate that party's right to an order setting child support at the amount commensurate with the party's need or ability to pay.  He also contends that New Hampshire's child support statutory scheme and case law, providing for modification retroactive to the time of filing, reflects an intent to accurately reflect the obligor's ability to pay as that ability changes over time.

In its October 2011 order, the trial court stated:  "[T]his case began in 2009 and the Court will utilize [the husband's] 2009 income for purposes of setting a child support payment."  On reconsideration, the court further explained:  "The Court utilized the income of 2009 because it found that the expert[s'] analysis, exhibits, and testimony were more beneficial to the Court's analysis of [the husband's] current income than the testimony relating to other years.  Further, [the husband] filed for modification in 2010 based upon his 2009 income."  However, in its analysis of the capital gains issue, the trial court acknowledged that New Hampshire cases, including Rattee, 146 N.H. at 46, and Feddersen, 149 N.H. at 196, "indicate that present income is the actual income that a party has available to it to utilize for itself or to benefit that party and to pay child support," and "ruled that the Court is required to determine present income utilizing RSA 458-C:2 to determine an appropriate child support payment."  Thus, the issue is whether the court properly applied this precedent to calculate child support under the guidelines.

"Trial courts have broad discretion in reviewing and modifying child support orders." Taylor, 153 N.H. at 702. "Accordingly, we will set aside a modification order only if it clearly appears on the evidence that the court's exercise of discretion was unsustainable." Feddersen, 149 N.H. at 196 (quotation omitted).

It is undisputed that "child support should be determined on the basis of present income." Rattee, 146 N.H. at 46. "When calculating a parent's child support obligation, the court must first determine the parent's 'present income.'" In the Matter of Gray & Gray, 160 N.H. 62, 67 (2010). "It is up to the trial court to decide what income figures should be used based upon the facts presented at the hearing and the credibility and forthrightness of the noncustodial parent in disclosing income." Id. (quotations omitted). "This includes the use of past tax returns when the obligor provides 'misleading' information on the financial affidavit." Id. (quotation omitted). For example, in Gray, in which the only evidence of the obligor father's current income was an affidavit he submitted, "the family division observed that the father's 'reported income and expenses as well as his attitude and demeanor' raised doubts about 'his credibility and forthrightness,'" and therefore "properly ordered the father to submit the past tax returns to aid in establishing his present income." Id.; see Feddersen, 149 N.H. at 197; Crowe, 148 N.H. at 223. Here, however, the parties do not dispute the veracity of the information the husband provided in his 2009 and 2010 tax returns, but disagree only as to the application of that information. The trial court made no finding that the husband's 2010 information was misleading. Thus, this exception to the general rule that current information is the best representation of "present income" is not implicated here.

The trial court's decision was based upon review of two full sets of financial data relating to the husband's 2009 income and 2010 income, with analysis by experts for both sides. The court explained that it "utilized the income of 2009 because it found that the expert[s'] analysis, exhibits and testimony were more beneficial to the Court's analysis of [the husband's] current income than the testimony relating to other years. Further, [the husband] filed for modification in 2010 based upon his 2009 income." The trial court did not explain what characteristics of the 2009 evidence, as compared to the 2010 evidence, made the older information "more beneficial" to an analysis of present income. Nor does the record support that conclusion. Furthermore, nothing indicates that the court's decision to use the 2009 figures was grounded in any concern raised in the husband's modification petition: He did not move to modify on the ground of a substantial change in circumstances, see In the Matter of Duquette & Duquette, 159 N.H. 81, 86 (2009); rather, he sought modification of the child support order without the need to show a substantial change of circumstances pursuant to RSA 458-C:7, I(a).

16

The husband argues that "[t]he decision to use financial information from the date of filing is . . . critical to preserving a moving party's rights to modification." He asserts that if the obligor's financial circumstances warrant a modification when he moves for it, but change before the case is heard, then the obligor's right to modify his child support obligation to that commensurate with his ability to pay during the year in which he moved for hearing will be lost. He also points out that a court's order granting modification of a child support award is frequently retroactive to the date of the motion, indicating that the figures at the time of filing are intended to govern the modification. We agree that fairness concerns may be implicated when a parent's income fluctuates between the time of a request for modification and the time that the case is actually heard, resulting in either overpayment or underpayment for the period while the case is pending. However, the remedy for a parent who has made payments under an outdated support order cannot be a new support order based upon financial figures that are not current; such a resolution would be inconsistent with the child support guidelines.

"New Hampshire's child support guidelines shall be applied in all child support cases, including any order modifying a support order." Duquette, 159 N.H. at 86 (quotation and ellipsis omitted). "There is a rebuttable presumption that a child support award calculated under the guidelines is the correct amount of child support." Id. (quotation omitted). "The presumption may be overcome and the trial court may deviate from the guidelines when it is shown by a preponderance of the evidence that the application of the guidelines would be unjust or inappropriate . . . because of special circumstances." In the Matter of Forcier & Mueller, 152 N.H. 463, 465 (2005) (quotations and citations omitted). "Pursuant to the legislative scheme, all items includable as 'gross income' must be used to determine the parties' total support obligation." Feddersen, 149 N.H. at 197. However, an item not includable as "gross income" may nonetheless be relevant to the computation of a child support award, by contributing to special circumstances that would make deviation appropriate. See In the Matter of Fulton & Fulton, 154 N.H. 264, 268 (2006) (holding that gifts are not included in definition of gross income, but that trial courts may consider impact of gifts on financial condition of the parties and that RSA 458-C:5's special circumstances standard is sufficiently flexible to address issue).

In the case of a parent's fluctuating income, the correct course of action is to calculate the parties' child support obligation under the guidelines, and then to explain what, if any, circumstances warrant deviation from that amount. See Feddersen, 149 N.H. at 198 ("The statutory scheme provides courts with the means to address income fluctuations. For instance, trial courts may adjust an award when applying the uniform child support guidelines would result in a 'confiscatory support order.'" (citation omitted)). Indeed, here, as the trial court noted in another context, "the legislature

17

provided an avenue to address the [husband's] concern by providing the Court with discretion to lower any child support award it deems confiscatory." See RSA 458-C:4, II (2004); RSA 458-C:5 (Supp. 2013). Although the trial court may order modification effective as of the filing date of the petition to modify, see RSA 458-C:7; Maciejczyk v. Maciejczyk, 134 N.H. 343, 345 (1991), "[w]e would strain the bounds of logic . . . to hold that the court's authority to order a reduction mandated such a reduction, or limited the court's discretion to deny the reduction if the circumstances warranted denial." Giles v. Giles, 136 N.H. 540, 546 (1992). The statutory scheme is sufficiently flexible to allow trial courts to fashion a just modification and repayment order, as necessary, in cases in which the application of the guidelines — to either future payments or payments between the date of filing and the court's final order — would be "unjust or inappropriate." RSA 458-C:4, II; see RSA 458-C:7; RSA 458-C:5, I ("special circumstances" allowing adjustments in application of support guidelines are not limited to the special circumstances enumerated in the provision).

Nor are we persuaded by the husband's argument that our holding will require endless delays in order to obtain the latest financial data and allow experts time to analyze that data. We do not hold that hearings must be delayed to allow the calculation and review of ever-newer financial data. Our holding today merely reaffirms our longstanding rule that child support awards are to be based upon the obligor's "present income." See Hillebrand v. Hillebrand, 130 N.H. 520, 526 (1988); see also, e.g., Feddersen, 149 N.H. at 196.

We conclude that, on the record before us, the trial court erred by using the husband's 2009 income for purposes of calculating his "present income." Accordingly, we vacate the calculation of child support and remand for further proceedings consistent with this opinion.

## IV.    Reimbursement of Overpaid Child Support

The wife argues that the trial court lacked subject matter jurisdiction to order her to reimburse the husband for overpayment of support resulting from the modification of the support order. She maintains that the 2007 amendment to RSA 458-C:7, III, affects substantive rights because it provides that "the court shall order, absent a showing of undue hardship, the obligee to directly reimburse the obligor" (emphasis added) for any overpayment of support resulting from a modification of a support order. Therefore, she argues, because her divorce was finalized in 2006, application of the 2007 amendment to her is unlawful. See In the Matter of Donovan & Donovan, 152 N.H. 55, 62-63 (2005).

Because we are remanding for redetermination of the child support amount, and the wife's argument regarding the trial court's authority to award reimbursement of any overage may again arise, we address the issue.

The wife's reliance upon Donovan, 152 N.H. 55, Walker v. Walker, 116 N.H. 717 (1976), and Henry v. Henry, 129 N.H. 159 (1987), for the proposition that a statutory change that affects substantive rights may be applied only prospectively is misplaced. To be sure, "[w]e have held previously that statutory changes affecting parties' rights to post-divorce financial support would not be applied retroactively to pre-existing divorce decrees." Donovan, 152 N.H. at 63. However, the amendment to RSA 458-C:7, III addresses the procedure for an obligor spouse to recover overpayments in the wake of a successful motion to modify his or her child support obligation. It does not retroactively change child support orders made under divorce decrees. Cf. Donovan, 152 N.H. at 63 (contrasting prior statutory changes with substantive effect against procedural change from earlier amendment to RSA 458-C:7, which did not "mandate a change in child support but simply open[ed] up a new channel of inquiry into whether a modification is appropriate" (quotation omitted)). As noted above, the purpose of modification procedures is to ensure that the parties' obligations are commensurate with their respective needs and their respective abilities to meet them as of the time of the motion to modify and going forward. See, e.g., Taylor, 153 N.H. at 702; see also Feddersen, 149 N.H. at 195-96 (including in calculation of "gross income" significant increases between 1998, when motion to modify was filed, and 2002, when hearing was held).

Because the statutory amendment affects only modification procedures, it is the date of the motion to modify, rather than the date of divorce, that controls our retroactivity analysis. The husband's motion to modify was filed in 2010, after the effective date of the 2007 amendment to the modification procedures; the application of that amendment to the modification proceedings, therefore, cannot constitute a retrospective law. Laws 2007, 274:1 (effective January 1, 2008).

Because we are vacating the court's child support award and remanding, we do not address her argument that the trial court erred by failing to address whether the award would cause her "undue hardship."

Affirmed in part; reversed in part; vacated in part; and remanded.

DALIANIS, C.J., concurred; LYNN, J., concurred specially.

19

LYNN, J., concurring specially. I write separately to make explicit what I take to be implicit in section II(B) of Justice Conboy's opinion. I agree that, in the case of a pass-through entity like a limited partnership, it makes sense to impose upon the limited partner, here the husband, the burden of demonstrating that expenses claimed by the partnership are reasonable and necessary for the production of income. To the extent that the limited partner is unable to sustain this burden, reported expenses may not be used to offset the limited partner's reported gross income from the partnership. However, consistent with the core principle that the basis for determining an obligor's child support obligation must be the income available to pay child support, in the case of a limited partner who establishes that he or she does not have control over the management of the partnership, I do not understand the court to suggest that the income attributed to the limited partner can exceed the total of the amount actually distributed to the limited partner or used for his or her personal benefit during the period in question. Based on this understanding, I concur in the court's decision.