# THE STATE OF NEW HAMPSHIRE

## SUPREME COURT

**In Case No. 2014-0007, <u>In the Matter of Greydon Colby and Alicia Colby</u>, the court on January 23, 2015, issued the following order:**

Having considered the brief, the reply brief, the memorandum of law, and the record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). We affirm.

The petitioner, Greydon Colby (father), appeals the determination of his income for the purposes of child support in a final decree issued by the Circuit Court (<u>Tenney</u>, J.) in his divorce from the respondent, Alicia Colby (mother). <u>See</u> RSA 458-C:2, IV (2004). He contends that the trial court erred by: (1) disallowing his "Dues and Subscription expenses as a deductible business expense"; and (2) adding $15,000 to his gross receipts "because it believed [he] was not depositing all of the incoming cash from his carpentry business into his bank account." We assume, without deciding, that these issues are preserved for our review.

We will uphold the trial court's decision with respect to child support unless it is unsupported by the evidence or tainted by an error of law. <u>In the Matter of Hampers & Hampers</u>, 154 N.H. 275, 283 (2006) (<u>Hampers I</u>). We defer to the trial court's judgment on such issues as resolving conflicts in the testimony, measuring the credibility of witnesses, and determining the weight to be given evidence. <u>In the Matter of Aube & Aube</u>, 158 N.H. 459, 465 (2009). The fact finder may accept or reject, in whole or in part, the testimony of any witness or party and is not required to believe even uncontested evidence. <u>Id</u>. at 466. If the trial court's findings can reasonably be made on the evidence presented, they will stand. <u>In the Matter of Brownell & Brownell</u>, 163 N.H. 593, 596 (2012).

We first address the trial court's disallowance of the father's "Dues and Subscription expenses." To be deductible for purposes of determining self-employment income under RSA 458–C:2, IV, business expenses must be actually incurred and paid and must be reasonable and necessary for producing income. <u>In the Matter of Woolsey & Woolsey</u>, 164 N.H. 301, 307 (2012). Whether to deduct reasonable and necessary expenses from the business's income distributions when calculating a parent's income for child support purposes is a highly fact-specific determination. <u>In the Matter of Hampers & Hampers</u>, 166 N.H. 422, 440 (2014) (<u>Hampers II</u>). It is for the trial judge to determine whether claimed expenses meet the criteria. <u>Woolsey</u>, 164 N.H. at 307. The burden is on

the party claiming the expenses to establish their deductibility.  Hampers II, 166 N.H. at 440.

In this case, the father has provided us with transcripts of only two of the four days of hearings.  See Bean v. Red Oak Prop. Mgmt., 151 N.H. 248, 250 (2004); see also Sup. Ct. R. 13.  The mother asserts, and the father does not contest, that he "failed to include the transcript of his cross examination in which the specific nature of these fees was addressed," and that his "cross-examination specifically supports the Court's refusal to deduct the subscription and dues expenses as being unrelated to any income earned by" him.  The father does not cite to any evidence in the record compelling a finding that these expenses are reasonable and necessary.  Instead, he argues that one of these expenses "was listed as a franchise fee" and "[i]t is reasonable to assume that [he] would not pay $3,000 to a franchise fee that was not necessary for producing income."

Because it is the father's burden to provide a record that is sufficient to decide the issues he is raising and because the father has not provided a complete transcript, we assume that those portions of the final hearing that have not been transcribed support the trial court's findings regarding the deductibility of these expenses.  See Bean, 151 N.H. at 250; see also Sup. Ct. R. 15(3) (providing that if appealing party challenges evidentiary support for finding, appealing party shall provide transcript of all relevant evidence, which shall contain all oral proceedings, with limited exceptions not at issue here, absent an order to the contrary).

We next address the trial court's addition of $15,000 to the father's gross receipts to account for the "regular and somewhat substantial cash income that was not deposited into his account, which [it concluded] cannot be overlooked."  The trial court also found this addition to the father's gross receipts necessary because the father unfairly calculated his annual income on the basis of a fifteen-month period, which may have included two seasonally-slow quarters, thereby "possibly disproportionately lowering his gross income when fifteen months is adjusted to twelve months."

The trial court found that "[i]t is clear that all of [the father's] income was not deposited or included in the gross income numbers" he presented to the trial court.  It also found that "[t]he ATM withdrawals [shown on the father's bank statements] don't come close to being able to pay everything he allegedly paid in cash" and that "[h]e also had regular living expenses that he likely would have used cash for that can't be accounted for."  It found that the father's accountant testified that the father paid some truck payments and some liability insurance payments in cash.  Furthermore, it found that some of the business payments the father claimed as expenses included cash back to him, which he also claimed as expense.  In addition, the trial court referred to a $12,000 deposit, which the mother asserts was not included on the father's income and expense exhibit.

2

The father argues that these findings were unsupported by the evidence. He contends that "[s]ince the trial court specifically concluded that [he] did not actually pay nearly half of his truck expenses, it was clearly erroneous to later add income based upon the assumption that these payments were made in cash exceeding the amount of ATM withdrawals." However, the trial court concluded that "some [auto] expenses, like the truck payments, have not been corroborated." See Hampers II, 166 N.H. at 440 (burden on party claiming expense to show it is deductible for purposes of determining self-employment income). It also noted that the father's accountant testified that "it [was] his understanding that some of the truck payments were paid in cash or by Western Union," but that "[h]e could not explain where the cash would have come from" and that "the lack of documentation . . . appears to show that [the father] did have access to cash on [sic] some months."

The father argues that the cash payments came from a "cash cushion" created by excess ATM withdrawals. However, the trial court found that "it was clear that there was insufficient cash from the withdrawals to come close to making all of the payments that potentially might have been made by cash." The father argues that he did not pay his truck loan every month. However, the trial court noted that the father's accountant testified that the father told the accountant that "he made all of his truck payments." See Aube, 158 N.H. at 465 (stating we rely upon trial court to resolve conflicts in evidence). The father states that he received personal loans, but does not develop this argument. See State v. Blackmer, 149 N.H. 47, 49 (2003).

The father argues that the trial court's "narrow view of three cash payments [for business expenses] on two separate days does not support a finding that [the father] earned an additional $15,000 in income." However, the trial court's order relied upon more than those transactions to reach its conclusion that "it is clear that all of [the father's] income was not deposited or included in the gross income numbers" and that he "obviously had access to quite a lot of cash." Furthermore, the transcripts that the father did not provide may include additional evidence supporting these conclusions. See Bean, 151 N.H. at 250.

Finally, the father argues that the trial court's addition of $15,000 to his gross receipts is "illogical" and "arbitrary." However, the trial court was faced with the difficult task of determining his income "in spite of all of the expenses/payments/income that didn't match up in [his accountant's] testimony." The trial court noted that the father's accountant's testimony was "not that helpful" because "[i]t appears that [the accountant] was given some inaccurate or insufficient information which he relied on to calculate [the father's] profit and loss statement and [the father's] net income." The trial court concluded that $15,000 was "a rough estimate, but it would be unfair to [the mother] not to consider the cash not deposited, which clearly existed, but which [the father] denied." The trial court noted that the resulting net income was less

3

than that which the mother testified the father earned during the marriage, when she kept his business accounts, and less than that found by the trial court in response to the father's 2012 motion for modification of the temporary child support order.

Under these circumstances, we conclude that the trial court's finding that adding $15,000 to the father's annual gross receipts was necessary to account for his cash income could reasonably be made on the evidence presented.  See Brownell, 163 N.H. at 596.

Affirmed.

Dalianis, C.J., and Hicks, Conboy, Lynn, and Bassett, JJ., concurred.

**Eileen Fox,
Clerk**