Salem Family Division
No. 2008-655

## In the Matter of Jeffrey M. Gray and Janette L. Gray

Submitted: October 8, 2009
Opinion Issued: April 8, 2010

Jeffrey Gray, by brief, *Pro se.*

*Kelly A. Ayotte,* attorney general (*James W. Kennedy,* assistant attorney general, on the brief), for the New Hampshire Department of Health and Human Services.

DUGGAN, J. The petitioner, Jeffrey Gray, appeals an order of the Salem Family Division (*Ryan,* J.) finding that he failed to comply with the family division's July 8, 2005 Uniform Support Order. We affirm.

The record supports the following facts. Jeffrey Gray and Janette Gray are the parents of two children; they divorced in August 2002. In October 2004, the Salem Family Division (*DiMeo,* J.) awarded custody of the children to the children's aunt. In a separate order, the family division ordered the father and mother to pay child support directly to the aunt. They appealed the custody order.

While the appeal was pending, the father moved to modify the support order. On July 8, 2005, the Salem Family Division (*Korbey,* J.) modified the order so that the father was to make his child support payments directly to the New Hampshire Department of Health and Human Services (DHHS). The father did not appeal.

In January 2006, we held that under RSA 458:17 the family division lacked statutory authority to award custody to the aunt. *In the Matter of Jeffrey G. & Janette P.,* 153 N.H. 200, 204-05 (2006). Within a month of our decision, the aunt obtained a guardianship over the children in Maine. In

March 2006, the Salem Family Division (*Korbey*, J.) ceded jurisdiction over the custody of the children to the State of Maine. The father appealed that decision.

In September 2006, while that appeal was pending, the father moved to vacate the October 2004 support order. He argued that after our decision in *Jeffrey G.*, the family division did not change the support order to reflect the change in custody. He contended that it was unreasonable to continue child support payments when the guardianship was on appeal to both the Maine and New Hampshire Supreme Courts. On November 15, 2006, the Family Division (*DeVries*, J.) denied the father's motion without prejudice. The court suspended the enforcement and collection of his obligation, with the obligation continuing to accrue, while the appellate courts determined to whom he owed a duty of support. DHHS moved for reconsideration.

In an unpublished order dated November 28, 2006, we affirmed the family division's order ceding jurisdiction over the children's custody to Maine. *Petition of Jeffrey G.*, No. 2006-0349 (N.H. November 28, 2006). On January 30, 2007, the Family Division (*Hurd*, J.) partially granted DHHS's motion to reconsider suspending enforcement of the support order and scheduled a hearing. At the hearing, the family division vacated its suspension of the enforcement of the support order. On February 28, 2007, the father filed a "notice to court, office of child support enforcement, and child support referee" stating that the family division lacked subject matter jurisdiction over the issues of custody and support. The Family Division (*Hurd*, J.) granted DHHS's motion to dismiss the notice.

On April 29, 2008, DHHS moved for the father to show cause why he had not complied with the support order. On August 12, 2008, the Salem Family Division issued an order finding the father in contempt because he had failed to comply with the support order. As of July 25, 2008, the father owed $29,901.84 in child support. This appeal followed.

*I. Salem Family Division's Authority to Enforce the Support Order*

The father raises twenty-one issues on appeal, including several jurisdictional arguments stemming from his claim that the court's authority to award support pursuant to RSA 458:17 (2004) (now codified at RSA 461-A:14, I (Supp. 2009)) is dependent upon its authority to award custody. Therefore, he argues, the support order is unenforceable because in *Jeffrey G.* we held that the Salem Family Division did not have jurisdiction to award custody of the children to the aunt. DHHS counters that the father's arguments are barred by res judicata and collateral estoppel because he failed to appeal the family division's earlier decisions. Alternatively, DHHS argues that support and custody are independent, so that the family division retained authority to enforce the support order.

■ We first address whether the father's failure to appeal the family division's previous rulings bars his jurisdictional arguments in this appeal. Subject matter jurisdiction is "[j]urisdiction over the nature of the case and the type of relief sought; the extent to which a court can rule on the conduct of persons or the status of things." BLACK'S LAW DICTIONARY 931 (9th ed. 2009). In other words, it is "a tribunal's authority to adjudicate the type of controversy involved in the action." *Shoop v. Kittitas County*, 30 P.3d 529, 532 (Wash. Ct. App. 2001), *aff'd on other grounds*, 65 P.3d 1194 (Wash. 2003). "A court lacks power to hear or determine a case concerning subject matters over which it has no jurisdiction." *Daine v. Daine*, 157 N.H. 426, 428 (2008) (bracket and quotation omitted). A party may challenge subject matter jurisdiction "at any time during the proceeding, including on appeal," and may not waive subject matter jurisdiction. *Close v. Fisette*, 146 N.H. 480, 483 (2001). Therefore, the father may raise these arguments on appeal.

To determine whether the family division had subject matter jurisdiction over the father's support order, we must interpret the relevant statutes. When undertaking statutory interpretation, "[w]e first examine the language found in the statute and where possible, we ascribe the plain and ordinary meanings to words used." *Appeal of Garrison Place Real Estate Inv. Trust*, 159 N.H. 539, 542 (2009) (quotation omitted). "When a statute's language is plain and unambiguous, we need not look beyond it for further indications of legislative intent." *Id.* (quotation omitted). "Courts can neither ignore the plain language of the legislation nor add words which the lawmakers did not see fit to include." *Appeal of Astro Spectacular*, 138 N.H. 298, 300 (1994) (quotation omitted). "We interpret statutes not in isolation, but in the context of the overall statutory scheme." *Coco v. Jaskunas*, 159 N.H. 515, 519 (2009) (quotation omitted).

■ The plain language of RSA chapter 490-D (Supp. 2009) grants subject matter jurisdiction to the family division over the father's support order. *See Daine*, 157 N.H. at 427 (finding "court's authority in matters of marriage and divorce is strictly statutory"). Pursuant to RSA chapter 490-D, the legislature has granted the family division jurisdiction over "[p]etitions for divorce, nullity of marriage, alimony, custody of children, support, and to establish paternity." RSA 490-D:2, I. The family division's authority includes the power to address child support in divorce proceedings. *See* RSA 458:17. The family division's decrees remain in effect until they are judicially modified, unless the court has provided for earlier cessation of payments or the child support obligation terminates by operation of law. *In the Matter of Feddersen & Cannon*, 149 N.H. 194, 200 (2003). The family division's jurisdiction continues "with respect to all

subsequent proceedings which arise out of the original cause of action." *Daine*, 157 N.H. at 427-28 (quotation omitted). Therefore, the family division retained the ability to modify and enforce the support order.

The father, however, argues that our decision in *Jeffrey G.* terminated his obligation to comply with the support order. We disagree. In *Jeffrey G.*, we only considered whether the family division had statutory authority to award custody of the minor children to the aunt. Moreover, we unequivocally stated that "the trial court had jurisdiction to determine custody of the children pursuant to RSA 458:17." *Jeffrey G.*, 153 N.H. at 204. We went on to hold that the court "did not have authority to grant custody to [the aunt] in this context." *Id.* at 205. This was based on RSA 458:17, VI, which "identifies only two classes of third parties, grandparents and stepparents, who may be awarded custody if the court determines that such an award is in the best interests of the child." *Id.* at 203-04 (quotation omitted). Because the aunt did not fall into either of those two classes of third parties, the family division could not award her custody in this case. *Id.* at 205. Our decision did not divest the family division of jurisdiction over the issues of custody or support; we merely held that the family division could not award custody to the aunt. *Id.*

We conclude that the family division retained jurisdiction over the issue of child support after it ceded jurisdiction over the custody dispute to Maine. The Uniform Interstate Family Support Act, codified at RSA chapter 546-B (2007), governs support orders. It provides that the family division "has continuing, exclusive jurisdiction over a child support order . . . [a]s long as this state remains the residence of the obligor." RSA 546-B:7, I. Under the plain language of the statute, a New Hampshire court retains jurisdiction over a child support order even when the children move to a different state. Therefore, although the family division no longer has jurisdiction over custody, it may enforce the support order because the record reflects that the father, the obligor, continues to reside in New Hampshire.

## II. Family Division's Order Finding the Father in Contempt

The father raises several challenges to the family division's decree that he is not in compliance with the support order. First, he argues that the family division unsustainably exercised its discretion when it found that he was voluntarily underemployed and not in compliance with the support order. Next, he contends that the court erred in requiring him to submit income tax returns for 2001 to 2005 because they do not reflect his present income. Finally, he challenges the court's finding that he is $29,901.84 in

arrears. DHHS contends that the Salem Family Division properly found he was voluntarily underemployed and that he failed to comply with the support order. We agree.

■ "The court's powers in custody, maintenance, and education of children in divorce and separation cases are conferred entirely by statute. We afford broad discretion to the trial court in divorce matters, and will not disturb the trial court's rulings regarding child support absent an unsustainable exercise of discretion or an error of law." *In the Matter of Johnson & Johnson*, 158 N.H. 555, 558 (2009) (quotation omitted). "The party challenging the court's order has the burden of showing that the order was improper and unfair." *Id.* (quotation omitted). The father has not met this burden.

■ We cannot conclude that the family division unsustainably exercised its discretion when it found the father failed to comply with the support order. At the hearing, the father provided no evidence to show that his financial circumstances had changed, thus requiring a modification of the support order. The only evidence before the family division was a financial affidavit the father submitted. In addition, the family division found the father to be voluntarily underemployed "[b]ased upon his most current financial affidavit and the total absence of any evidence that he is physically or mentally incapacitated." This was further supported by "the lack of any requests since 2005 to modify his obligation based upon a substantial change in circumstances."

■ Next, we address the father's argument that the family division improperly required him to submit his tax returns for the years 2001-2005. When calculating a parent's child support obligation, the court must first determine the parent's "present income." *Feddersen*, 149 N.H. at 196 (2003). "It is up to the trial court to decide what income figures should be used based upon the facts presented at the hearing" and "the credibility and forthrightness of the noncustodial parent in disclosing income." *Id.* (quotations omitted). This includes the use of past tax returns when the obligor provides "misleading" information on the financial affidavit. *Id.* at 197. Here, the family division observed that the father's "reported income and expenses as well as his attitude and demeanor" raised doubts about "his credibility and forthrightness." Therefore, the family division properly ordered the father to submit the past tax returns to aid in establishing his present income.

■ Finally, the father contests the family division's finding that he owes $29,901.84, arguing that he only owes $5,743 because that was the amount owed when we issued our decision in *Jeffrey G*. As set forth above, support

orders remain in effect until they are judicially modified. *See In the Matter of Haller & Mills*, 150 N.H. 427, 429-30 (2003). Because the Salem Family Division issued no subsequent orders modifying the support order, the father's obligation remained intact. Consequently, we cannot conclude that the family division unsustainably exercised its discretion when it found that the father owed $29,901.84 as of July 25, 2008.

We have reviewed the father's remaining arguments and hold that they lack merit and warrant no extended consideration. *Vogel v. Vogel*, 137 N.H. 321, 322 (1993).

*Affirmed.*

BRODERICK, C.J., and DALIANIS and CONBOY, JJ., concurred.