NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

9th Circuit-Nashua Family Division
Nos.   2018-0086
       2018-0153
       2018-0398

IN THE MATTER OF CRYSTAL NDYAIJA AND JOSHUA NDYAIJA

Submitted: December 16, 2019
Opinion Issued: March 11, 2020

Smith-Weiss Shepard, P.C., of Nashua (Robert M. Shepard on the brief), for the petitioner.

Joshua Ndyaija, self-represented party, by brief.

DONOVAN, J.  In this consolidated appeal, the respondent, Joshua Ndyaija, appeals various orders issued by the Circuit Court (Quigley and Introcaso, JJ.) following the parties' divorce.  The respondent argues that the trial court erred by: (1) dismissing his motion for contempt against the petitioner, Crystal Ndyaija; (2) denying his motion regarding parental interference; (3) denying his motion to restrain; (4) modifying his child support obligations for the parties' minor child; (5) denying his motion to modify the parties' parenting plan and permanent stipulation, vacating a provision of the parenting plan, and ordering him to pay the petitioner's attorney's fees; and (6) granting the petitioner's motion to approve daycare enrollment for the child. The respondent also argues that the trial court lacked jurisdiction to make an initial child custody determination under RSA chapter 458-A (2018), and lacked jurisdiction over the divorce action under RSA 458:5 and :6 (2018).  We affirm in part, vacate in part, and remand.

## I. Factual and Procedural Background

The record supports the following facts.  The parties married in July 2012 and lived together in Massachusetts until July 2014, when the petitioner moved to New Hampshire with their child.  In May 2015, the petitioner filed a petition for legal separation in the New Hampshire Circuit Court.  In her petition, she notified the trial court of an August 2014 court order on a domestic violence-related matter from a Massachusetts district court, but did not provide additional details.  In August 2015, the petitioner filed a petition for divorce in the New Hampshire Circuit Court.  In that petition, she notified the trial court of her involvement in two court cases relating to custody of the child: (1) a July 2014 matter in a Massachusetts district court that resulted in the issuance of a restraining order which awarded custody of the child to the petitioner but which expired in July 2015; and (2) an action for custody and visitation in a Massachusetts court filed by the respondent, which, the petitioner indicated, was still pending at the time of her divorce petition.  The trial court issued a temporary child custody order, which provided that the child live primarily with her mother and allowed the respondent to have supervised visits with the child for two days a week.

In May 2016, a Marital Master (DalPra, M.) recommended, and the Trial Court (Quigley, J.) approved, a final divorce decree, parenting plan, partial permanent stipulation, and uniform support order.  The parenting plan required the child to reside primarily with the petitioner and provided the respondent with parenting time during weekends, vacations, and certain holidays.  It further required, under paragraph G of the parenting plan, that the parties meet "as often as necessary for the benefit of the child" to review and adjust the parenting plan, and noted that the parties "agree to meet in March, 2017 to revise this plan before [the child] goes to school."  Paragraph H of the parenting plan set forth dispute resolution procedures in the event a disagreement between the parties arose, stating:

> Parties shall attempt to resolve any disagreement first through email exchanges.  If there has been no resolution within fourteen (14) days, the parties shall seek the assistance of an individual(s), [and] each party shall have the option of bringing one person to a meeting to try to resolve the issue.  That meeting shall occur within fourteen (14) days of notice by one party that an email resolution has not been reached.  In the event the meeting does not resolve the issue the parties may seek the assistance of the Court.

The uniform support order required the respondent to pay $50 per month in child support and provided that the order shall be reviewed upon either party obtaining new employment.  The permanent stipulation required both parties to obtain life insurance for the benefit of the child if available through their employers.

In August 2016, the respondent filed a contempt motion alleging, inter alia, that the petitioner failed to adhere to the dispute resolution procedures set forth in paragraph H of the parenting plan. His motion set forth several unresolved disputes and alleged that the petitioner failed to respond to emails or meet in person within 14 days as required by paragraph H. The petitioner objected to the motion. The Trial Court (Introcaso, J.) approved an order recommended by a Marital Master (DalPra, M.) dismissing the motion. The respondent appealed to this court and we vacated and remanded the decision because the trial court's order addressed the petitioner's compliance with paragraph G, but not paragraph H.

Shortly thereafter, in September 2017, the respondent filed two motions with the trial court — a motion "to restrain" and a motion regarding "parental interference" — in which he requested the court to order the petitioner to stop and retract "slanderous allegations" against him and "restrain[] her from doing any further harm to [his] livelihood." Following a hearing, the Marital Master (Dalpra, M.) recommended, and the Trial Court (Quigley, J.) approved, an order dismissing the contempt motion and denying his motion to restrain and his motion regarding parental interference.

Thereafter, the respondent and the petitioner filed separate motions to modify the respondent's child support obligation after the respondent obtained new employment. The respondent sought termination or a reduction of the child support obligation, while the petitioner sought a modification that took into account the respondent's new source of income. Following a hearing, the Trial Court (Introcaso, J.) issued a new uniform support order that increased the respondent's child support obligation to $274 per week. The respondent requested the court to deviate from the child support guidelines, but the trial court found "no justification for an adjustment." See RSA 458-C:5 (Supp. 2019). The order also required the respondent to pay an arrearage that had accrued since September 18, 2017, the date he filed his motion to modify his child support obligation, which the trial court determined to be $5,149.38. The order required the respondent to pay the weekly child support and arrearage by immediate income assignment to the Division of Child Support Services (DCSS). The respondent filed a motion for reconsideration, which the court denied.

Subsequently, the respondent moved to modify the parenting plan and permanent stipulation. He requested that the court modify the parenting plan to, in part, award him additional parenting time with the child, "hold [the] Petitioner accountable for dishonoring" the requirement in paragraph G to meet to review and adjust the parenting plan, and remove the life insurance requirement in the permanent stipulation because it violated his religious beliefs. The petitioner objected, and thereafter filed a motion to allow her to enroll the child in private daycare and kindergarten in New Hampshire, to be

paid for solely by her.  Following a hearing on these matters, the Trial Court (Introcaso, J.) denied the respondent's requests, sua sponte vacated paragraph G of the parenting plan, and, finding the respondent's motion to be frivolous, awarded attorney's fees to the petitioner.  The trial court also granted the petitioner's request allowing her to enroll the child in private daycare and kindergarten.  The respondent filed a motion for reconsideration, which the court denied.

The respondent filed three separate appeals of these orders, which we consolidated, setting forth numerous challenges to the merits of the trial court's decisions.  The respondent also makes several arguments challenging, for the first time on appeal, the trial court's jurisdiction to rule on these issues, including the court's jurisdiction over the child custody proceeding under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA).  See RSA ch. 458-A.

Pursuant to the UCCJEA, a court in New Hampshire "may not exercise its jurisdiction" over a child custody case "if, at the time of the commencement of the proceeding," a child custody proceeding "has been commenced in a court of another state having jurisdiction substantially in conformity with this chapter, unless the proceeding has been terminated or is stayed by the court of the other state because a court of this state is a more convenient forum."  RSA 458-A:17, I.  Because the petitioner's divorce petition alerted the trial court to a pending child custody proceeding commenced in a Massachusetts court, and nothing in the appellate record showed that Massachusetts had terminated the proceeding or ruled that New Hampshire was a more appropriate forum, we remanded the issue of jurisdiction under the UCCJEA to the trial court to make findings and rulings as to whether it had jurisdiction when the petitioner commenced the child custody proceeding in New Hampshire.  See RSA 458-A:17, II.  We noted that, even though the respondent raises this issue for the first time on appeal, the UCCJEA governs the court's subject matter jurisdiction to make or modify a child custody determination, and, therefore, jurisdiction under the UCCJEA may be challenged at any time during the proceeding.  See In re Guardianship of K.B., 172 N.H. ___, ___ (decided October 25, 2019) (slip op. at 2).  We retained jurisdiction of the remaining issues on appeal.

On remand, the trial court issued an order finding that the Massachusetts court dismissed the child custody proceeding on October 21, 2015, and, therefore, New Hampshire "had subject matter jurisdiction."  The respondent filed a motion to reconsider.  His motion did not dispute the trial court's factual finding on the dismissal of the Massachusetts action.  Instead, he disputed the trial court's conclusion that New Hampshire had jurisdiction, citing the active status of the Massachusetts restraining order at the time the petitioner filed her original petition for legal separation in New Hampshire.  The

4

trial court denied his motion.  We now address all issues on appeal, beginning with jurisdiction.

## II. Analysis

### A. Jurisdiction

To resolve the respondent's jurisdictional challenges, we must interpret the relevant statutes.  See In the Matter of Gray & Gray, 160 N.H. 62, 65 (2010).  When examining the language of a statute, we ascribe the plain and ordinary meaning to the words used.  In the Matter of Yaman & Yaman, 167 N.H. 82, 86 (2014).  When a statute's language is plain and unambiguous, we need not look beyond it for further indications of legislative intent.  Gray, 160 N.H. at 65.  Courts can neither ignore the plain language of the legislation nor add words that the lawmakers did not see fit to include.  Id.  We interpret statutes not in isolation, but in the context of the overall statutory scheme.  Id.

We first address the respondent's arguments regarding the court's jurisdiction over the child custody proceeding under the UCCJEA.  Under RSA 458-A:12, I, "a court of this state has jurisdiction to make an initial child custody determination" if "[t]his state is the home state of the child on the date of the commencement of the proceeding."  A child's "home state" is "the state in which a child lived with a parent . . . for at least 6 consecutive months immediately before the commencement of a child-custody proceeding."  RSA 458-A:1, VII.  The child custody proceeding here commenced in May 2015 when the petitioner filed her petition for legal separation.  See RSA 458-A:1, IV (defining "child-custody proceeding" as "a proceeding in which legal custody, physical custody, or visitation with respect to a child is an issue," including a proceeding for divorce or separation), RSA 458-A:1, V (defining "commencement" as the "filing of the first pleading in a proceeding").  At that time, the petitioner and the child had been living in New Hampshire for over six months.  Therefore, New Hampshire was the child's home state on the date the petitioner commenced the proceeding.  See RSA 458-A:1, VII.

Nevertheless, the respondent contends that the trial court lacked jurisdiction because other child custody proceedings had commenced in Massachusetts at the time the petitioner filed the petition for legal separation in New Hampshire.  See RSA 458-A:17, I.  Specifically, he contends that, at the time the petitioner filed her petition for legal separation: (1) the Massachusetts restraining order against the respondent was still active, see RSA 458-A:1, IV (defining "child-custody proceeding" to include a proceeding for "protection from domestic violence"); and (2) the respondent's Massachusetts action for custody and visitation was pending.

The petitioner's initial petition for legal separation notified the trial court of a Massachusetts case relating to domestic violence but provided no further

information describing the nature of the case. The petitioner's subsequent divorce petition provided additional details about the Massachusetts case — specifically, that the case involved a restraining order issued in July 2014, which awarded custody of the child to the petitioner. The divorce petition also notes, however, that the restraining order expired one year after it was issued, which the respondent does not dispute. Thus, the Massachusetts child custody determination under the restraining order had terminated prior to any child custody determination made by the trial court here, and, therefore, did not deprive the trial court of jurisdiction to make such a determination under the UCCJEA. See RSA 458-A:17, I (permitting a court of this state to exercise jurisdiction where the proceeding in another state "has been terminated or is stayed by the court of the other state").

The petitioner's divorce petition also notified the trial court of the pending Massachusetts action for custody and visitation filed by the respondent in March 2015. She explained that a motion to dismiss the case had "been drafted and will be marked up for Hearing in September." Although the Massachusetts court dismissed the action on October 21, 2015, the dismissal occurred after the trial court here made its initial child custody determination in August.

To avoid jurisdictional conflicts in child custody proceedings, RSA 458-A:17, II requires courts of this state to "examine the court documents and other information supplied by the parties." Then, "[i]f the court determines that a child-custody proceeding has been commenced in a court in another state having jurisdiction substantially in accordance with this chapter," the trial court "shall stay its proceedings and communicate with the court of the other state." Id. If the court of the other state "does not determine that the court of this state is a more appropriate forum," RSA 458-A:17, II requires a New Hampshire court to dismiss the proceeding.

Because the petitioner's divorce pleading alerted the trial court to a simultaneous child custody proceeding in Massachusetts, which constitutes a "state having jurisdiction substantially in accordance" with New Hampshire's UCCJEA, RSA 458-A:17, II; compare RSA 458-A:12 with Mass. Gen. Laws ch. 209B, § 2 (2016), the trial court was required to stay the New Hampshire proceeding and communicate with the Massachusetts court. See RSA 458-A:17, II. Nevertheless, the Massachusetts proceeding was dismissed in October 2015, during the pendency of the divorce proceeding in New Hampshire and prior to the court's approval of the final divorce decree in May 2016. Thus, at the time the trial court rendered its child custody determination as part of the final divorce decree, no simultaneous child custody proceeding was pending in another state. Moreover, the petitioner and her child have continued to reside in New Hampshire since they moved here in July 2014. See RSA 458-A:12, I. Accordingly, while we urge New Hampshire courts to follow the directives set forth in RSA 458-A:17 when alerted to a child custody proceeding in another

state, we conclude that the trial court had jurisdiction to render its child custody determination following the dismissal of the Massachusetts action.

The respondent, however, further argues that New Hampshire does not have jurisdiction over the child custody proceeding because the petitioner sought to conceal their child from him by moving to New Hampshire after obtaining the restraining order in Massachusetts. To the extent the respondent argues that RSA 458-A:19, I, required the trial court to decline jurisdiction due to the petitioner's "unjustifiable conduct," we disagree. RSA 458-A:19, I, requires a court to "decline to exercise its jurisdiction" in a child custody proceeding where "a person seeking to invoke its jurisdiction has engaged in unjustifiable conduct." However, the statute permits the court to exercise jurisdiction where "[t]he parents and all persons acting as parents have acquiesced in the exercise of jurisdiction." RSA 458-A:19, I(a).

We acknowledge that the petitioner's filing of the petition for separation in New Hampshire shortly after the respondent filed his Massachusetts complaint for child custody and visitation undermines one of the purposes of the UCCJEA: to "'[d]iscourage the use of the interstate system for continuing controversies over child custody.'" Yaman, 167 N.H. at 87 (quoting Unif. Child Custody Jurisdiction and Enforcement Act § 101, cmt., 9-1A U.L.A. 657 (1999)). However, even assuming that the petitioner's actions were "unjustifiable," both parents acquiesced to the trial court's exercise of jurisdiction. See RSA 458-A:19, I. The parenting plan was approved by the court in May 2016 and, based upon the record before us, the respondent participated in the litigation before the parenting plan was issued without ever challenging the court's jurisdiction. Furthermore, nothing in the record reflects that the respondent challenged the court's jurisdiction prior to this appeal. Accordingly, the trial court was not required to decline jurisdiction under RSA 458-A:19, I.

The respondent next argues that the trial court lacked jurisdiction over the parties to the divorce matter, under RSA 458:5, and the cause of the divorce, under RSA 458:6. Pursuant to RSA 458:5, a court's jurisdiction over parties to a divorce case exists only where: (1) "both parties were domiciled in the state when the action was commenced"; (2) the plaintiff was domiciled in the state and "the defendant was personally served with process within the state"; or (3) "the plaintiff was domiciled in the state for one year next preceding the time when the action was commenced." Pursuant to RSA 458:6, "[j]urisdiction over the cause for divorce exists when it wholly arose or accrued while the plaintiff was domiciled in the state, and not otherwise."

As the petitioner notes, the respondent raises these arguments for the first time on appeal. The petitioner argues that, because the respondent appeared in the trial court proceedings without raising any objection to the trial court's jurisdiction, he agreed to the court's exercise of jurisdiction in this

7

case and should not be permitted to raise these arguments for the first time on appeal. However, "[t]he court's authority in matters of marriage and divorce is strictly statutory." Daine v. Daine, 157 N.H. 426, 427 (2008) (quotation omitted). Therefore, "the court has only such power in that field as is granted by statute." Id. Here, RSA 458:4 (2018) expressly limits "[t]he jurisdiction of the court to grant divorce . . . to cases where there is jurisdiction over the parties and of the alleged cause as defined in RSA 458:5 and 458:6." Accordingly, the court's jurisdiction to grant a divorce is limited to the circumstances described in RSA 458:5 and :6. Therefore, the respondent's participation in the proceedings below without objection cannot confer jurisdiction if the statutory requirements are not met. See Porter v. Porter, 112 N.H. 403, 405 (1972) (holding that the "domicile requirements" under RSA 458:5 "cannot be conferred by consent"); see also Daine, 157 N.H. at 428 ("Consent cannot confer jurisdiction where none exists." (quotation omitted)).

Nevertheless, we conclude that, based upon the record before us, the trial court had jurisdiction over the parties and the cause of the divorce. As to jurisdiction over the parties to the divorce, the record demonstrates that the petitioner has been domiciled in New Hampshire since July 2014, over one year before she commenced the divorce action in August 2015. Therefore, the domicile requirement under RSA 458:5 was met. See RSA 458:5, III.

As to the court's jurisdiction over the cause of the divorce, the respondent identifies a series of incidents that occurred in Massachusetts in or around July 2014 as the "origin and point of separation" — an alleged inquiry by the petitioner to a Massachusetts police department regarding child custody, the Massachusetts restraining order, and a neglect investigation with the Massachusetts Department of Family and Children. However, he makes no representation about the cause for divorce or where it occurred. According to the trial court's final divorce decree and the parties' partial permanent stipulation, approved by the trial court in May 2016, the cause of the parties' divorce was "[i]rreconcilable differences which have caused the irremediable breakdown of the marriage."

We have held that "causes involving a specific event such as a conviction of a crime [or] adultery" which have occurred while the petitioner is domiciled elsewhere may not meet the jurisdictional requirement under RSA 458:6. Woodruff v. Woodruff, 114 N.H. 365, 367 (1974). However, "other causes that are of a continuing nature . . . which began while [the petitioner] was domiciled elsewhere" may meet the requirement "if continued for the required time after the [petitioner] becomes domiciled here." Id. Irreconcilable differences may be one such cause, because "[i]f the differences are not reconciled they constitute a continuing condition in the marriage relationship which may persist after one of the parties becomes domiciled here." Id.; see RSA 458:7-a (2018).

In this case, the petitioner left the respondent in July 2014 and lived in New Hampshire for over one year before she commenced the divorce action. Accordingly, the differences between the parties were not reconciled for at least the period between July 2014 and August 2015. Thus, cause of the divorce continued after the petitioner became domiciled in New Hampshire. See Woodruff, 114 N.H. at 367 (explaining that RSA 458:7-a "does not require that the irreconcilable differences accrue over any specified period of time before they may form the basis for a cause for divorce"); RSA 458:7-a. Although "[n]o divorce can be decreed under this cause . . . unless the irreconcilable differences have caused an irremediable breakdown of the marriage," Woodruff, 114 N.H. at 367 (citing RSA 458:7-a (Supp. 1973)), we have held that, as a matter of law, the breakdown of the marriage cannot occur prior to the court's judicial determination that "the possibilities of reconciliation have been explored and have failed." Id. at 368; see RSA 458:7-a, :7-b (2018). Therefore, the breakdown of the marriage could not have occurred until after the petitioner filed her divorce petition, because that was the earliest that the court could find the marriage to be beyond reconciliation. Woodruff, 114 N.H. at 368. Accordingly, we conclude that the trial court had jurisdiction over the cause for divorce under RSA 458:6.

### B. Order on Contempt, Restraint, and Parental Interference Motions

### 1. Contempt

Next, the respondent argues that the trial court unsustainably exercised its discretion by denying his motion to hold the petitioner in contempt for failure to comply with paragraph H in the parenting plan, which requires the parties to communicate through email and, if necessary, in person, to resolve parenting disputes within specific time limits. Contempt power is discretionary and the proper inquiry is not whether we would have found the petitioner in contempt, but whether the trial court unsustainably exercised its discretion in refusing to do so. In the Matter of Giacomini & Giacomini, 150 N.H. 498, 500 (2004).

The respondent's contempt motion described several disagreements between the parties and alleged that the petitioner failed to "honor[] the 14-day period for email resolution [and] the 14-day period for a meeting" in paragraph H to resolve those disputes. Based upon the testimony of the parties at the contempt hearing and a review of the parties' emails and pleadings, the trial court found that "it is clear that Petitioner attempted to answer Respondent's inquiries" and was "not in contempt of any of the parenting time provisions." The trial court further found that the petitioner "did not act willfully or with malice by not agreeing to meet" with the respondent, and "was under the reasonable belief that there were no issues that needed resolution." In rendering this decision, the trial court did not consider some of the disputes

9

asserted by the respondent because they predated or fell outside of the scope of the parenting plan.

A review of the record provides support for these findings. We conclude that the trial court was not compelled to find the petitioner in contempt and did not unsustainably exercise its discretion by refusing to do so. See id. at 501.

### 2. Restraint and Parental Interference

The respondent next argues that the trial court unsustainably exercised its discretion by denying his motion to restrain and his motion regarding parental interference. We review a trial court's rulings on the denial of these motions under an unsustainable exercise of discretion standard. See In the Matter of Peirano & Larsen, 155 N.H. 738, 752 (2007) (reviewing the trial court's continuance of a restraining order for an unsustainable exercise of discretion).

In his motion to restrain, the respondent alleged that the petitioner provided "malicious and untruthful information about [him]" to law enforcement, DCSS, and their child's doctor, including a "very recent[]" false accusation to DCSS that he failed to pay child support in May 2016. His motion regarding parental interference alleges that the petitioner "continues to interfere with [his] rights as a father" by telling the child's doctor that the respondent was trying to kidnap their child. In her objections to these motions, the petitioner denied the allegations and stated that the respondent was attempting to "revisit issues that have long-since been concluded" and "have no relevance on issues between the parties today." At the hearing, the respondent discussed a timeline of the allegations, contending that the events set forth in his motions occurred between July 2014 and November 2016, when the petitioner made the complaint to DCSS.

The trial court denied both motions upon finding that "[a]ll the alleged incidents occurred two years prior to the parties' agreed Parenting Plan." The respondent points to the allegation relating to DCSS to argue that this finding was erroneous. However, the parties' pleadings and the respondent's proffers at the contempt hearing demonstrate that all allegations, including the allegation relating to DCSS, occurred at least 10 months before the respondent filed his motions. We conclude that these events are too distant in time to support motions of this nature. Accordingly, we uphold the trial court's denial of these motions.[1]

---

[1] The respondent also argues on appeal that the motion to restrain is supported by RSA 458:16, I(a)-(b) (2018). However, because he did not raise this argument to the trial court, we decline to review it. See Halifax-American Energy Co. v. Provider Power, LLC, 170 N.H. 569, 574 (2018).

## C. Amended Uniform Support Order

The respondent argues that the trial court erred in several ways in its calculation of the amended uniform support order issued in February 2018. The trial court's amended uniform support order is governed by New Hampshire's child support guidelines, which are codified in RSA chapter 458-C (2018 & Supp. 2019) and establish a uniform system to determine the amount of child support awards. In the Matter of Silva & Silva, 171 N.H. 1, 4 (2018); see RSA 458-C:4, I (2018) (applying the guidelines to "all child support cases," including orders modifying an existing support order). The purpose of RSA chapter 458-C is not only to ensure uniformity in determining the amount of child support, but also to ensure that both the custodial and non-custodial parents share in the support responsibility for their children, according to the relative percentage of each parent's income. Silva, 171 N.H. at 4.

Trial courts have broad discretion in reviewing and modifying child support orders. In the Matter of Hampers & Hampers, 166 N.H. 422, 442 (2014). We will not disturb the trial court's rulings regarding child support absent an unsustainable exercise of discretion or an error of law. Silva, 171 N.H. at 4.

The respondent first argues that the trial court erred because it based the amended support order of $274 per week on income figures proposed by the petitioner in her child support guidelines worksheet. See RSA 458-C:3-a (2018). He argues that these figures were inaccurate because: (1) the petitioner's calculation of the respondent's gross monthly income was not supported by the paystubs he provided; (2) the petitioner's monthly income provided in her child support guidelines worksheet failed to include her gross monthly income from her second, part-time employment; and (3) the petitioner failed to provide in her financial affidavit documentation of her income required by Family Division Rule 1.25-A(B)(1)(c).

Child support should be determined on the basis of present income. Hampers, 166 N.H. at 442. When calculating a parent's child support obligation, the court must first determine each parent's present income. In the Matter of Feddersen & Cannon, 149 N.H. 194, 196 (2003). It is up to the trial court to decide which income figures should be used based upon the facts presented at the hearing. Id.

As for the respondent's monthly gross income, he contends that the trial court accepted the petitioner's calculation of his income, which was based upon a weekly income of $1,800, despite the inconsistent income shown on his paystubs and his representation that he does not receive steady pay due to the contractual nature of his employment. The respondent provided four weekly paystubs with his financial affidavit, with one paystub showing earnings of $1,440 for 32 hours of work, and three subsequent paystubs showing weekly

earnings of $1,800 for 40 hours per week.  Nevertheless, the respondent listed $7,200 as his gross monthly income in his financial affidavit and child support guidelines worksheet, and informed the court at the hearing that he reached this figure by multiplying $1,800 by four weeks.  Thus, the respondent himself represented that his income is $1,800 per week.  Although the trial court determined that the petitioner provided the accurate calculation of his monthly gross income — she multiplied the weekly income of $1,800 by 4.33 weeks in a month, rather than four weeks — the respondent does not challenge this determination.  Accordingly, the trial court did not commit an unsustainable exercise of discretion in accepting the petitioner's calculation of the respondent's monthly gross income based upon a weekly income of $1,800.

However, as for the petitioner's monthly income, we agree with the respondent that the petitioner's child support guidelines worksheet, upon which the trial court relied in calculating the respondent's amended child support obligation, omitted income from one of her jobs.  The petitioner disclosed monthly wages from two jobs in her financial affidavit and provided a paystub reflecting this additional employment.  However, her child support guidelines worksheet included her monthly income from only one job.  Accordingly, the trial court committed an unsustainable exercise of discretion when it based its calculation of the support order on the gross monthly income set forth in the petitioner's guidelines worksheet.  Therefore, we vacate the support order and remand to the trial court to recalculate the respondent's child support obligation.

The respondent further argues that the petitioner failed to provide the requisite documentation under Rule 1.25-A(B)(1)(c) to support her asserted income set forth in her financial affidavit and child support guidelines worksheet.  Rule 1.25-A(B)(1)(c) requires the parties, as part of the mandatory initial self-disclosure, to provide the "four (4) most recent pay stubs (or equivalent documentation) from each current employer."  Fam. Div. R. 1.25-A(B)(1)(c).  Rule 2.16, which governs financial affidavits, further requires each party to "file with the court and with the other party a . . . financial affidavit which contains the information requested on the family division financial affidavit."  Fam. Div. R. 2.16.  The petitioner's notarized financial affidavit certifies that she has "complied with Rule 1.25-A regarding mandatory disclosure."  The record before us, however, indicates that she provided only one pay stub for each job.

While Rule 1.2 permits the court, "[a]s good cause appears and as justice may require," to "waive the application of any rule, except where prohibited by law," Fam. Div. R. 1.2, the record does not demonstrate that the trial court found good cause to waive the paystub requirement under Rule 1.25-A(B)(1)(c).  Accordingly, we remand this issue to the trial court to require the petitioner to either submit additional pay stubs or show good cause as to why this rule should be waived.

The respondent next contends that the trial court committed an unsustainable exercise of discretion when it failed to consider his request to deviate from the child support guidelines. He argues that the court failed to consider his financial obligations that he raised during the hearing — in particular, the amount of rent he pays — in determining his child support obligation.

There is a rebuttable presumption that a child support award calculated under the guidelines is the correct amount of child support. See Silva, 171 N.H. at 4; RSA 458-C:4, II (2018). The presumption may be overcome, and the trial court may deviate from the guidelines, when a party shows by a preponderance of the evidence that the application of the guidelines would be "unjust or inappropriate," RSA 458-C:4, II, because of "[s]pecial circumstances," RSA 458-C:5, I; Silva, 171 N.H. at 4.

RSA 458-C:5, I, includes a list of special circumstances that, if raised by a party or the court, the court must consider in making an adjustment that deviates from the child support guidelines. Silva, 171 N.H. at 4. Although this list is non-exhaustive, we have interpreted "special circumstances" as including only circumstances that are "economic in nature and relate to the impact of a parent's financial condition upon his or her ability to meet a child's needs." Id. (quotation omitted). Additionally, the trial court must consider any special circumstances "in light of the best interests of the child." RSA 458-C:5, I.

Here, the record demonstrates that the trial court considered, and rejected, the respondent's basis for his requested adjustment in determining his child support obligation. The trial court explained at the hearing that expenses such as rent, bills, and loan repayments are common expenses that are not "extraordinary, unusual expenses" to the respondent, and did not provide a basis to "treat [the respondent] differently than . . . any other parent."

In reaching this determination, the trial court did not unsustainably exercise its discretion. Although living expenses are "economic in nature," the respondent has not demonstrated that they "relate to the impact of [his] financial condition upon his . . . ability to meet [his] child's needs." Silva, 171 N.H. at 4. The respondent did not argue or otherwise offer an explanation to the trial court that his expenses prohibit him from meeting the child's needs, or that he could not make necessary changes to reduce his expenses. Further, there is nothing in the record to indicate that the respondent's expenses affect his financial situation such that the amount suggested by the guidelines is confiscatory. See RSA 458-C:5, I(j). Finally, to the extent that the respondent argues that the trial court was required to compare his expenses with the petitioner's when calculating his child support obligation, the respondent identifies no provision in RSA chapter 458-C that required the trial court to do so. See RSA 458-C:3 (2018), :5.

13

Next, the respondent argues that the trial court erred when it ordered him to pay an arrearage. The respondent asserts that, because he remained in compliance with the court's uniform support order in effect at the time, it would be "unfair to hold [him] responsible" for paying an amount that had not yet been ordered by the court. RSA 458-C:7 (2018) allows a party to apply "at any time for a modification" of a child support order "based on substantial change of circumstances." RSA 458-C:7, I(a). The statute also allows the trial court to modify a child support obligation from "the date that notice of the petition for modification has been given to the [opposing party]." RSA 458-C:7, II. Thus, the trial court had the discretion to apply its child support modification retroactively. Given that the respondent himself first notified the trial court and the petitioner of the change in circumstances that led to the trial court's child support modification — his new employment — it was neither unfair, nor an unsustainable exercise of discretion, for the trial court to order that modification to apply retroactively.

The respondent further contends that the trial court erred in its calculation of the arrearage amount. Specifically, he argues that the trial court failed to deduct the $50 monthly child support payments that, according to the respondent, he paid during the accrual period — September 18, 2017, to February 12, 2018.

The record demonstrates that the trial court deducted from the total arrearage the amount of attorney's fees the petitioner owed to the respondent from prior litigation. The record is silent, however, as to whether the trial court considered any child support payments the respondent made during the accrual period. Although the respondent raised this issue to the trial court in a motion for reconsideration, the trial court did not modify or clarify its calculation. Further, we note that, although the petitioner does not address this argument on appeal, she acknowledged in her objection to his motion for reconsideration that the respondent "continued to pay $50.00 per month as child support" after he obtained full employment. Because the record does not demonstrate whether the trial court considered any child support payments that the respondent paid during the accrual period in calculating the arrearage amount, we vacate the judgment and remand this issue to the trial court.

Finally, the respondent argues that the trial court erred by ordering that he pay child support directly to DCSS by immediate income assignment. He contends that, because his previous payments were timely, the court should have found good cause not to require immediate income assignment. RSA 458-B:2, I(c) (2018) provides that immediate income assignment "shall be suspended by the court" when the court "finds that there is good cause not to require immediate income assignment." However, a finding of "good cause" to suspend immediate income assignment must be based on "[p]roof of the obligor's timely payment" of previously ordered support and a "written

14

determination and explanation . . . as to why implementing immediate income assignment would not be in the best interests of the child." RSA 458-B:2, I(c)(1)-(2). There is nothing in the record demonstrating that the trial court made such a determination. To the extent that the respondent seeks to challenge the trial court's requirement that he pay child support directly to DCSS, he fails to develop this argument for our review. See Halifax-American Energy Co. v. Provider Power, LLC, 170 N.H. 569, 574 (2018) ("In the realm of appellate review, a mere laundry list of complaints regarding adverse rulings by the trial court, without developed legal argument, is insufficient to warrant judicial review." (quotation and brackets omitted)). Accordingly, we conclude that the trial court did not unsustainably exercise its discretion in ordering the respondent to pay his child support obligation to DCSS by an immediate income assignment.

### D. Order Modifying Parenting Plan and Permanent Stipulation

The respondent next makes several arguments challenging the trial court's order on his motion to modify the parenting plan and permanent stipulation, in which the trial court: (1) denied his request to remove, on religious grounds, the requirement to obtain life insurance for the benefit of the child; (2) vacated, sua sponte, paragraph G of the parenting plan, thereby implicitly denying his request to hold the petitioner "accountable" for refusing to meet with him pursuant to that paragraph; (3) denied his requests to modify the parenting plan to give him more parenting time and two consecutive, rather than non-consecutive, weeks of vacation with the child; and (4) awarded attorney's fees to the petitioner. We address each argument in turn.

The respondent first contends that the trial court committed reversible error because it attributed the respondent's requested prayers of relief to the petitioner in its order. However, there is nothing in the record to suggest that this discrepancy was prejudicial to the respondent. See Giles v. Giles, 136 N.H. 540, 545 (1992) ("For an error to require reversal on appeal, it must [have been] prejudicial to the party claiming it." (quotation omitted)). Although the trial court's order refers to "the Petitioner" when discussing the respondent's individual prayers for relief, the trial court was clearly aware that the respondent made the requests. The trial court held a hearing on the motion in which it heard argument directly from the respondent. Furthermore, the trial court's order states that it would "address the Respondent's requests in the order in which they appear . . . in his motion" and later refers to "the Respondent's Motion" as the basis for the award of attorney's fees to the petitioner. Accordingly, this misattribution does not constitute reversible error. See id.

The respondent next challenges the trial court's ruling on his request to remove the life insurance requirement. The respondent, however, does not argue that the trial court erred in denying the request. Instead, he argues that

15

the trial court mischaracterized the intent and effect of the life insurance requirement when it noted in its order that the court, in ordering the requirement, had "imposed an obligation on both parties to secure their child support obligation with a life insurance policy." Not only did the respondent fail to raise this argument to the trial court, see Halifax, 170 N.H. at 574, he provides no basis to support his assertion that the trial court's characterization of the requirement was incorrect or that it prejudiced him in any way, see Giles, 136 N.H. at 545. Accordingly, we uphold the trial court's denial of this request.

The respondent next argues that the trial court did not have the statutory authority necessary to vacate, sua sponte, paragraph G in the parenting plan. See RSA 461-A:11 (2018). Generally, we will not overturn a trial court's modification of an order regarding parenting rights and responsibilities unless it clearly appears that the trial court unsustainably exercised its discretion. In the Matter of Kelly & Fernandes-Prabhu, 170 N.H. 42, 47 (2017). To the extent that resolution of the modification issue requires us to engage in statutory interpretation, our review is de novo. Id.

Paragraph G of the parenting plan required the parties to meet "as often as necessary" to review and adjust the parenting plan, and specifically required them to meet in March 2017 to revise the plan before the child began school. The respondent alleged that he and the petitioner met in March 2017 to discuss changes to the plan before the child began school, and agreed to meet again in January 2018 for that purpose. However, the petitioner thereafter refused to meet and rejected his proposed changes to the parenting plan. The petitioner did not dispute these facts, but contended that meetings with the respondent had not produced any agreements between the parties and made her feel uncomfortable. She further noted that the respondent did not agree to her proposals and would only agree to his own. The trial court, in vacating paragraph G, reasoned that it was "not only unnecessary . . . , but also unlikely to produce any meaningful agreements of the parties." The trial court noted that it was "more a source of conflict than a means by which conflict can be avoided" and "not statutorily based."

RSA 461-A:11, I, grants a court authority to modify a permanent order concerning parental rights and responsibilities if it finds one of the predicate circumstances specified in the statute. See Kelly, 170 N.H. at 47. The trial court here did not specifically identify which of the predicate circumstances authorized it to modify the parenting plan. The respondent argues that, because neither party requested this modification, RSA 461-A:11, II provides the only authority by which the court could have vacated this provision. That provision requires that the modification be "based on the best interest of the child." RSA 461-A:11, II ("Except as provided in RSA 461-A:11, I(b)-(i) for parenting schedules and RSA 461-A:12 for a request to relocate the residence of a child, the court may issue an order modifying any section of a permanent

parenting plan based on the best interest of the child."). He argues that the court's basis for vacating paragraph G does not fall within this provision.

The petitioner argues that this modification was justified under RSA 461-A:11, I(f). Under RSA 461-A:11, I(f), a court may issue an order modifying a permanent order concerning parental rights and responsibilities where "[t]he modification makes either a minimal change or no change in the allocation of parenting time between the parents, and the court determines that such change would be in the best interests of the child." The petitioner argues that the trial court's modification falls within this provision because the modification had no impact on the allocation of parenting time and was in the best interests of the child.

We agree with the petitioner that the trial court's modification did not affect the allocation of parenting time under the parenting plan. However, under either statutory provision identified by the parties, the trial court was required to find that removal of paragraph G was in the best interests of the child. See RSA 461-A:11, I(f), II. Although the trial court did not make an express finding in its order as to whether the modification was in the child's best interests, we construe the trial court's reasoning for vacating paragraph G as an implied finding that this modification was in the best interests of the child, and find that it is supported by the record. See In the Matter of Kosek & Kosek, 151 N.H. 722, 724-25 (2005) (assuming the trial court found, and concluding that the record supports, that its modification to a visitation schedule was not contrary to the best interests of the children).

RSA 461-A:6, I (Supp. 2019) codifies the "best interests of the child" criteria, setting forth a list of non-exhaustive factors the court must consider, including "[t]he ability and disposition of each parent to foster a positive relationship and frequent and continuing . . . contact with the other parent, including whether contact is likely to result in harm to the child or to a parent." RSA 461-A:6, I(e); see In the Matter of Miller & Todd, 161 N.H. 630, 640-41 (2011). Here, the trial court heard testimony from both parties that they could not reach an agreement when they met regarding changes to the parenting plan. Furthermore, their representations provide an inference that the meetings failed to foster negotiations between the parties to reach an agreement and instead caused at least one party to feel uncomfortable. These facts, viewed in light of the extensive litigation that has resulted from disagreements between the parties, support a determination that the parties lack the ability to foster a positive relationship with each other, and that requiring continued contact between the parties would not be in the best interests of the child. See RSA 461-A:6, I(e). Accordingly, the trial court's decision to vacate paragraph G of the parenting plan was not an unsustainable exercise of discretion.

17

The respondent next contends that the trial court erred in denying his request to modify the parenting plan to allow him to have additional parenting time and two consecutive weeks of vacation with the child. He argues, for the first time on appeal, that his request falls within RSA 461-A:11, I(h), which allows the court to modify an order concerning parental rights and responsibilities where "one parent's allocation . . . of parenting time was based in whole or in part on his or her work schedule and there has been a substantial change in that work schedule such that the existing order is not in the child's best interest." However, as the petitioner notes, the respondent failed to cite a statutory basis or provide evidence to the trial court to support this significant modification. Although the respondent asserted in his motion to reconsider that he was a full-time student at the time the parenting plan was executed, nothing in the record demonstrates that the allocation of parenting time in the plan was based, in whole or in part, on his status as a student, or that the existing parenting time is not in the child's best interest. See RSA 461-A:11, I(h). Thus, the trial court's decision to deny his request was not an unsustainable exercise of discretion.

Next, the respondent argues that the trial court unsustainably exercised its discretion by awarding the petitioner attorney's fees. We will not overturn the trial court's decision concerning attorney's fees absent an unsustainable exercise of discretion. Fat Bullies Farm, LLC v. Devenport, 170 N.H. 17, 30 (2017). To warrant reversal, the discretion must have been exercised for reasons clearly untenable or to an extent clearly unreasonable to the prejudice of the objecting party. Id. In evaluating the trial court's ruling on this issue, we acknowledge the deference given a trial court's decision regarding attorney's fees. Id. If there is some support in the record for the trial court's determination, we will uphold it. Id.

While the general rule in New Hampshire is that parties pay their own attorney's fees, we have recognized various exceptions. Glick v. Naess, 143 N.H. 172, 175 (1998). A prevailing party may be awarded attorney's fees when that recovery is authorized by statute, an agreement between the parties, or an established judicial exception to the general rule that precludes recovery of such fees. Jesurum v. WBTSCC Ltd. P'ship, 169 N.H. 469, 482 (2016). One judicially-created exception exists when a party must litigate against an opponent whose position is patently unreasonable. Glick, 143 N.H. at 175. A claim is patently unreasonable when it is commenced, prolonged, required, or defended without any reasonable basis in the facts provable by evidence, or any reasonable claim in the law as it is, or as it might arguably be held to be. Id.; see Kukene v. Genualdo, 145 N.H. 1, 3 (2000). A party's unreasonableness is treated on an objective basis as a variety of bad faith, and made just as amenable to redress through an award of attorney's fees as would be the commencement of litigation for the sole and specific purpose of causing injury to an opponent. Glick, 143 N.H. at 175. When attorney's fees are awarded against a private party who has acted in bad faith, the purpose is to do justice

18

and vindicate rights, as well as to discourage frivolous lawsuits.  See Fat Bullies Farm, 170 N.H. at 30.


The trial court awarded attorney's fees based upon a finding that the respondent's motion to modify the parenting plan and permanent stipulation was "frivolous . . . and without any established legal basis."  The respondent argues that there was a legal basis for his motion — paragraph G of the parenting plan and the parenting plan generally.  He argues that he "approached the court for assistance regarding the enforcement" of provisions in the parenting plan "put in place for dealing with parenting disagreements," which the petitioner "appear[ed] to be flouting."

As an initial matter, it was not unreasonable for the trial court to conclude that certain requests in his motion lacked a legal basis.  As discussed above, the respondent provided no legal or factual basis to support his requests to modify the parenting time provisions of the parenting plan.  Moreover, although his motion asserted that the life insurance provision of the permanent stipulation violated his religious beliefs, he made no such representation to the trial court at the hearing and ignored the trial court when it specifically asked him whether he had recently become a member of a particular faith.

Nonetheless, while it was reasonable for the trial court to deny the respondent's request to enforce paragraph G of the parenting plan, this request did not lack a legal basis.  At the time the respondent filed his motion, paragraph G was an enforceable provision of the parenting plan.  Although the parties met in March 2017, they failed to reach an agreement, and the petitioner did not dispute that she thereafter refused to meet with the respondent.  While it may have been reasonable for the petitioner to make this decision, given the parties' inability to reach an agreement, at the time the respondent filed his motion paragraph G remained an enforceable provision that required the parties to meet to review and adjust the parenting plan "as often as necessary for the benefit of the child."  The parties' pleadings — including the petitioner's motion to approve daycare and kindergarten enrollment — demonstrate that an ongoing disagreement existed between the parties with respect to specific provisions of the parenting plan.  Therefore, the respondent's request to enforce paragraph G, in an effort to resolve the parties' dispute, had a legal foundation and does not provide a basis to support the award of attorney's fees.  Nevertheless, because the respondent's motion also set forth requests that lacked a legal basis, we vacate and remand the trial court's award to determine, in light of our decision, whether to award attorney's fees pertaining to those particular claims.

### E. Order Approving Daycare and Kindergarten Enrollment

Finally, the respondent argues that the trial court erred when it

considered and approved the petitioner's motion to enroll their child in private daycare and kindergarten. Specifically, the respondent contends that the trial court committed an unsustainable exercise of discretion when it ruled on this motion because paragraph G requires both parties to work together to make changes to the parenting plan before the child begins school. In light of the trial court's proper decision to vacate paragraph G, the parties' inability to reach an agreement, and the parenting plan's provisions providing that the child primarily reside with the petitioner and attend school where the parent with primary residential responsibility resides, we conclude that the trial court's decision to grant the petitioner's motion was not an unsustainable exercise of discretion.

### III. Conclusion

We conclude that the trial court properly exercised jurisdiction over the child custody proceeding under RSA chapter 458-A and the divorce action under RSA 458:5 and :6. Furthermore, we conclude that the trial court did not commit an unsustainable exercise of discretion in denying the respondent's motion for contempt, motion to restrain, and motion regarding parental interference.

As for the trial court's amended uniform support order, the trial court did not unsustainably exercise its discretion by applying the petitioner's calculation of the respondent's income in determining his amended child support obligation, declining to adjust the child support obligation, ordering the respondent to pay an arrearage, and ordering him to pay his child support obligation to DCSS by immediate income assignment. However, we vacate and remand the amended uniform support order for the trial court to: (1) consider income from the petitioner's second job; (2) require the petitioner to comply with Family Division Rules 1.25-A(B)(1)(c) and 2.16 by providing four pay stubs per employer or to establish good cause to waive this requirement; and (3) consider the amount of child support the respondent paid during the arrearage period in its arrearage calculation.

Finally, we conclude that the trial court did not unsustainably exercise its discretion by denying the respondent's requests to modify the parties' parenting plan and permanent stipulation and vacating paragraph G of the parenting plan. We vacate the award of attorney's fees to the petitioner and remand the issue to the trial court.

Affirmed in part; vacated in part; and remanded.

HICKS, BASSETT, and HANTZ MARCONI, JJ., concurred.